# Exhibit 1

## SETTLEMENT AGREEMENT AND LIMITED RELEASE

This Settlement Agreement and Limited Release ("Agreement") is made by and between named Plaintiff Deborah George ("Plaintiff"), and opt-in Plaintiffs Susan Schouten [AZ], Lisa Rogers Stock [CA], Dennis Lonergan [CO], Karen Fitzpatrick [ID], Amicie Crayton [IL], Pamela Ogden [MD], Colleen Korb [OH], and Pamela Johnson [WA], on behalf of themselves, the class and subclasses they purport to represent, their agents, representatives, assignees, executors, and trustees (collectively, "Plaintiffs") and Defendant Academy Mortgage Corporation (UT), on behalf of itself, its parents, divisions, subsidiaries, predecessors and successors, and its and their directors, officers, members, fiduciaries, insurers, employees, attorneys and agents (collectively, "Academy" or the "Company") (Plaintiffs and Academy are each a "Party" and collectively referred to herein as the "Parties").

WHEREAS, on February 12, 2016, Plaintiff Deborah George commenced this litigation by filing a Complaint ("Complaint") in the U.S. District Court for the Northern District of Georgia (the "Court"), captioned *Deborah George, individually and on behalf of others similarly situated v. Academy Mortgage Corporation (UT)*, Civil Action No. 1:16-cv-00471-CAP (the "Action"), asserting individual and collective action claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), alleging that Academy as a company-wide payroll practice paid its non-exempt employees certain non-discretionary bonuses and other non-excludable incentive compensation that were not included in the calculation of the overtime premiums that Academy paid for the overtime hours recorded and paid as worked during the time period in which the bonus was earned, in one or more pay periods from the period beginning three years prior to the Complaint filing date, as defined more fully below;

WHEREAS, as of this date, two hundred and sixty-six (266) individuals have executed and submitted consents to join the Action as party plaintiffs asserting FLSA claims against Academy (the "Opt-In Plaintiffs"), which the parties agreed to be deemed timely filed and/or tolled as of the earlier of (i) the date the consent was filed in court, or (ii) the date the executed consent was received by the notice administrator in response to the opt-in notice distributed in the Action; and

WHEREAS, the parties acknowledge that Plaintiff, by and through lead class/collective counsel C. Andrew Head of Head Law Firm, LLC ("Class Counsel"), at all times intended to amend the Complaint (and communicated that intention to amend to Academy's counsel at the initial early planning conference in the Action) after the close of the collective action opt-in period to include class action claims pursuant to Fed. R. Civ. P. 23 in states (i) having state statutes permitting state law claims for wages, damages, interest or penalties arising out of the failure to pay overtime on bonuses alleged in the Claim (defined below), (ii) having sufficient numerosity of potential class members for potential class certification, (iii) in which an opt-in plaintiff who joined the Action worked overtime hours for which the calculation of the overtime rate paid did not include amounts paid by the bonus at issue in the Claim (the "potential state law class actions"); and

WHEREAS, the parties agreed to negotiate potential settlement regarding the Claim under the FLSA and the laws of the potential state law class actions, Defendant produced payroll data regarding the periods applicable to the Claim under the FLSA and the laws of the state law

1

class actions from which the parties could extrapolate potential damage models, and the parties subsequently engaged in an in-person mediation on April 28, 2017, before experienced wage and hour mediator Steven G. Pearl, Esq.; and

WHEREAS, Plaintiff subsequently filed to amend the Complaint to add state law class action claims for the states of Arizona, California, Colorado, Idaho, Illinois, Maryland, Ohio, and Washington (the "Filed States"); and

WHEREAS, Academy denies that it has committed any wrongdoing or violated any state or federal law pertaining to payment of wages or hours of work and has vigorously defended the federal and state law claims asserted in the Action; and

WHEREAS, in order to avoid the expense and burden of further litigation, the Parties desire to resolve the Claim for all Named Plaintiffs, Opt-In Plaintiffs, and the absent class members of the Filed States.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual promises hereinafter set forth, the Parties agree as follows:

1. **Definitions.**

   a. "Bonuses" mean the Performance Bonuses, Signing Bonuses, Referral Bonuses, Lump Sum Holiday Pay, or Double Pay (all as defined below) paid for the Claim Periods that were contained in the payroll data produced by Academy to Plaintiffs in preparation for the mediation, that were not included (as alleged by Plaintiffs to be required by law, except as to double pay which Academy negotiated to be included in this release for clarity) in the calculation of the regular rate upon which Academy calculated the overtime premiums paid for hours worked in the work weeks in which Plaintiffs worked the hours compensated by the Bonuses.

   b. "Claim" means Plaintiffs' allegation that the overtime premiums that Academy paid its employees internally classified and paid as non-exempt for the hours that Defendant compensated on its regularly scheduled pay periods, as contained in its payroll records produced to Plaintiff for the Claim Periods prior to mediation, were paid at less than the full required overtime premium amounts because the overtime premium amounts were calculated and paid without factoring in the Bonuses amounts paid, resulting in non-payment of overtime premiums on the Bonuses amounts paid for Plaintiffs' work in the work weeks in which Plaintiffs worked the recorded hours compensated by the Bonuses within the Claim Periods, limited in scope to only those non-exempt employees who worked overtime hours under applicable law in a work week for which the amounts of one or more of the Bonuses were paid (except double pay, which is merely derivative of overtime hourly rate pay) and received overtime premiums paid for those overtime hours that were calculated and paid without factoring in the amounts that Academy actually paid as the Bonuses at issue within the Claim Periods.

   c. "Claim Periods" means as follows:

2

1. For Performance Bonuses (defined as the bonuses and commissions amounts actually paid, reflected under the columns titled "Ops Bonus," "Bonus," or "Commission" in the final AMC002029 spreadsheet produced by Academy prior to mediation, that were not included in the calculation of the regular rate upon which Academy calculated and paid the overtime premiums in its regular pay periods that were paid for hours worked in the work weeks in which Plaintiffs worked the hours compensated by those bonuses and commissions) ("Performance Bonuses"), from the FLSA Start Date and, as applicable, the State Class Start Date, until the First Inclusion Date.

2. For Signing Bonuses having a "clawback" period with a recoupment provision tied to remaining employed for a set number of months (defined as the amounts actually paid, reflected under the column titled "Sign on Bonus" in the final AMC002029 spreadsheet produced by Academy prior to mediation, that were not included in the calculation of the regular rate upon which Academy calculated and paid the overtime premiums in its regular pay periods that were paid for hours worked in the work weeks in which Plaintiffs worked the hours compensated by those Signing Bonuses) ("Signing Bonuses"), from the FLSA Start Date and, as applicable, the State Class Start Date, through the Settlement Date;

3. For Double Pay (defined as the amounts actually paid, reflected under the column titled "DBL Earnings" in the final AMC002029 spreadsheet produced by Academy prior to mediation, that were not included in the calculation of the regular rate upon which Academy calculated and paid the overtime premiums in its regular pay periods that were paid for hours worked in the work weeks in which Plaintiffs worked the hours compensated by those Double Pay payments) ("Double Pay"), from the FLSA Start Date and, as applicable, the State Class Start Date, through the Settlement Date;

4. For Lump Sum Holiday Pay (defined as the amounts actually paid, reflected under the column titled "Hol Pay" in the final AMC002029 spreadsheet produced by Academy prior to mediation, that were not included in the calculation of the regular rate upon which Academy calculated and paid the overtime premiums in its regular pay periods that were paid for hours worked in the work weeks in which Plaintiffs worked the hours compensated by those Holiday Pay payments) ("Holiday Pay"), from the FLSA Start Date and, as applicable, the State Class Start Date, through the Settlement Date; and

5. For Referral Bonuses (defined as the amounts actually paid, reflected under the column titled "Referral Bonus" in the final AMC002029 spreadsheet produced by Academy prior to mediation, that were not included in the calculation of the regular rate upon which Academy calculated and paid the overtime premiums in its regular pay periods that were paid for hours worked in the work weeks in which Plaintiffs worked the hours compensated by those Referral Bonus payments) ("Referral Bonuses"), from the FLSA Start Date and, as applicable, the State Class Start Date, through the Settlement Date.

d. "First Inclusion Date" means the April 25, 2016 pay date (the first pay date on which Academy began including all of those amounts in factoring overtime premiums owed

due to Performance Bonuses for hours worked during the preceding month of March, 2016);

e.  "Plaintiffs" means the Named Plaintiffs and the Opt-In Plaintiffs in the Action.

f.  "FLSA Start Date" means the date three years prior to a plaintiff's filing in this case (or submission to the notice administrator per the parties' Stipulation [Doc. 20]) of their signed consent to join the Action, as adjusted per the parties' Tolling Agreement.

g.  "State Class Start Date" means the maximum look-back period under the applicable Filed States' statutes of limitations, based on the September 1, 2016 start date of the parties' Tolling Agreement in the Action.

h.  "Released FLSA Claims" means any and all Plaintiffs', Opt-in Plaintiffs', and for any State Settlement Class members who receive notice and timely file a claim form to receive payment on an FLSA claim their, claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against Academy that were or could have been asserted in the Complaint or Amended Complaint in the Action based exclusively on the Claim for the Claims Period, for alleged unpaid wages, overtime compensation, liquidated or other damages, unpaid costs, penalties (including late payment penalties), interest, attorneys' fees, litigation costs, restitution or other compensation and relief, arising under the FLSA for the time period between the FLSA Start Date and the Settlement Date.

i.  "Released State Law Claims" means any and all State Settlement Class members' claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against Academy that were or could have been asserted in the Complaint or Amended Complaint based exclusively on the Claim for the Claims Period, for alleged unpaid wages, overtime compensation, liquidated or other damages, unpaid costs, penalties (including late payment penalties), interest, attorneys' fees, litigation costs, restitution or other compensation and relief arising under state statutes, regulations, or common law, for the time period between the State Class Start Date and the date of preliminary approval.

j.  "Settlement Date" means April 28, 2017, the date of the parties' agreement in principle to settlement of the Claim in the Action.

k.  "State Class Claims" mean the following damages, compensation, and other penalties for the Claim, as applicable per state:

1.  Arizona Class: Overtime back pay and treble damages
2.  California Class: Overtime back pay, interest, § 203 penalties, § 226 penalties
3.  Colorado Class: Overtime back pay and 175% penalty
4.  Idaho Class: Overtime back pay and treble damages
5.  Illinois Class: Overtime back pay and double damages
6.  Maryland Class: Overtime back pay and treble damages

4

7.   Ohio Class: Overtime back pay and § 4113.15 penalties
8.   Washington Class: Overtime back pay and double damages

l.   "Tolling Period" means the period beginning with the September 1, 2016 effective date of the parties' Tolling Agreement, a copy of which is attached hereto as Exhibit A, and continuing through June 13, 2017.

**2.      No Admission of Liability or Concession as to the Merits.**

Academy expressly denies any wrongdoing or any violation of state or federal law as alleged in the Action.  Nothing contained in this Agreement shall be construed as an admission of any liability or concession as to the merits of any claim by any Party, and all Parties agree not to offer this Agreement as evidence or otherwise use it in any judicial or administrative proceeding, except that this Agreement may be introduced in any proceeding for the sole purpose of enforcing its terms.

**3.      Approval of Settlement.**

(a)      All terms of this Agreement are contingent upon the approval of the Parties' settlement and certification by the Court (and, as applicable, any bankruptcy court having jurisdiction over Plaintiff's claim) of the Settlement Classes (as defined in Section 5 below) for settlement purposes only.

(i)      For purposes of this Agreement, "Preliminary Approval" shall be deemed to occur upon the issuance of a Court order conditionally certifying the Settlement Classes specified in Section 5 for purposes of providing notice to the affected individuals as described below (the "Preliminary Approval Order").  The Preliminary Approval Order shall also, among other things, require any requests for exclusion from the Rule 23 Settlement Class or objections to the Settlement to be received no later than the deadline for affected individuals to respond to the aforementioned notice.

(ii)      If the Court grants an order ("Final Approval Order") fully, finally, and unconditionally (1) granting the Parties' motion for final approval of their settlement and (2) extinguishing the released claims as specified herein, and the settlement is approved as required by an order entered by any applicable bankruptcy court, then the "Effective Date" of this settlement shall be deemed to occur (A) thirty-five (35) days after the issuance of the later of such approval orders, if no appeal of said order is filed within that 35-day period, or (B) upon the final disposition of any appeal that has the effect of affirming the order in its entirety ("Effective Date").

(iii)      The Parties agree to cooperate and take all steps necessary and appropriate to jointly move for a Preliminary Approval Order and Final Approval Order before the Court in the Action, and by Class Counsel in any applicable bankruptcy action, and otherwise effectuate all aspects of this Agreement.  The Parties agree that they will jointly move for a Final Approval Order incorporating the terms of this Settlement Agreement as the parties' stipulated judgment, and retaining jurisdiction over its enforcement.  The Parties may notify the Court by

Joint Notice that the payment obligations have been satisfied and, if requested by Academy upon satisfaction of payment obligations by the QSF, satisfaction of judgment shall enter at that time.

(b)     Academy stipulates for settlement purposes only to the certification of the Settlement Classes but does not waive, and instead expressly reserves, its right to challenge the propriety of conditional or class certification for any purpose as if this Agreement had not been entered into by the Parties in the event that the Court does not approve the settlement or the Effective Date does not occur.

(c)     The Parties and their counsel agree that they will, following their execution of this Agreement, execute a Joint Motion For Preliminary Approval of Class and Collective Action Settlement and Incorporated Memorandum of Law seeking Preliminary Approval of their proposed settlement.  The Parties agree that they will file the Joint Motion with the Court within 21 days of the execution by all parties of this Agreement, and Class Counsel will take such actions necessary to obtain approval from any bankruptcy court having jurisdiction over Plaintiff's claims herein.

(d)     The Parties agree that if the Court (or the applicable bankruptcy court) does not grant preliminary or final approval of the settlement due to the Court's rejection of (i) the class-wide payment and release structure or (ii) the amount of any payments to be paid from settlement, then this Agreement may be rejected by Academy as to (i) or by Plaintiffs as to (ii) herein.  If a party rejects the settlement under the exclusive list of rights in this subparagraph, the Parties agree to work in good faith to attempt to resolve the dispute in favor of compromise resulting in an approved agreement under the Dispute Resolution procedures set forth in Section 25 below.

(e)     In conjunction with the filing of the Joint Motion, the Parties will jointly request that the Court hold a fairness hearing regarding the Parties' request for approval of their proposed settlement not fewer than one-hundred (100) days after the filing of the Joint Motion. Counsel for the Parties will communicate with the Clerk of the Court and make any further filings necessary to secure the approval of their request. Class Counsel will take such actions necessary to obtain final approval from any bankruptcy court having jurisdiction over Plaintiff's claims herein.

## 4.     Amendment to Complaint.

(a)     Prior to or no later than concurrent with the filing of the Parties' Joint Motion, Class Counsel shall file pursuant to FED. R. CIV. P. 15(a)(2) (and with Academy's express consent to amending the pleadings) the Amended Complaint in the Action.

(b)     The Parties hereby stipulate and agree that Academy shall not be required to serve or file a responsive pleading in response to the Amended Complaint itself unless, for any reason, (i) the Court denies the Parties' request for Preliminary Approval, (ii) the Court does not enter the Final Approval Order; or (iii) the Effective Date cannot occur. In which case, Academy will have 21 days from such date to file and serve a responsive pleading.

5.      **Settlement Classes.**

(a)      The <u>FLSA Collective</u> consists of all Named Plaintiffs and Opt-In Plaintiffs who filed or submitted opt-in Consents. The FLSA Collective, combined with those State Settlement Class members who timely submit a Claim form to opt-in and receive payment on their FLSA claim, together constitute the "FLSA Settlement Collective."

(b)      The <u>State Settlement Class</u> consists of the individuals reflected in the final AMC002030 spreadsheet produced by Academy prior to mediation, who were paid during any applicable Claim Periods in the manner covered by the Claim in the states of Arizona, California, Colorado, Idaho, Illinois, Maryland, Ohio, and Washington, unless removed from the State Settlement Class by timely filing a request for exclusion from the Settlement in compliance with this Agreement, for the Claim from the applicable State Class Start Date through the end of the Claims Period as applicable for each item addressed therein (each state identified in this subsection a "State Class," each member of a State Class a "State Settlement Class member," and collectively the "State Settlement Classes").

(c)      In the event that, for any reason, the Court does not enter a Final Approval Order or the Effective Date cannot occur, the Court's certification of the State Settlement Classes shall be void, of no effect, and shall not be used for any purpose whatsoever in any further proceeding(s) in the above-referenced lawsuit or in any other lawsuit asserting the same or similar claims and causes of action, and the parties will be returned to their respective positions *nunc pro tunc* as of the Settlement Date, the date on which they reached an agreement in principle to settle this Action, with the State Settlement Classes members' applicable statutes of limitations tolled as provided by the Tolling Agreement. In such event, the Parties recognize and agree that no statements made in any of the filings related to this settlement shall be cited or referenced in any future filing (whether expressly identified as an admission or for any other reason) related to class certification, as all such statements are made solely for the purpose of settlement and no party should be disadvantaged by any statement(s) made therein.

(d)      An individual who is a member of the FLSA Settlement Collective or the State Settlement Classes is referred to herein as a "Participating Class Member."

6.      **Settlement Payment.**

(a)      Academy agrees to pay the total sum of (and not to exceed) Nine Hundred Twenty-Five Thousand Dollars ($925,000.00) (the "Total Settlement Amount") into a Qualified Settlement Fund ("QSF") in order to fully and finally resolve settlement of the Claim for the Participating Class Members. The Total Settlement Amount is inclusive of the Settlement Administrator's administration costs; Class Counsel's fees and costs; interest; litigation costs; back wages; liquidated/statutory damages or penalties; and service payments to Named Plaintiffs, if awarded by the Court; arising out of the Claim. The Total Settlement Amount will cover the full amount of both the Participating Class Members' W-2 withholdings (and state/local withholdings if applicable) on the wages portion of their Settlement Payments, and any employer share of payroll taxes on the wages portion of the Settlement Payments made to Participating Class Members, to be paid by the Settlement Administrator from the QSF created for this settlement. Plaintiff s counsel, or the Settlement Administrator, will notify Defendant's

counsel of the allocations and the percentage for tax purposes of the net Settlement Payment to Participating Class Members that will be treated as wages and reported by Form W-2 by the QSF, and the percentage that will be treated as penalties, liquidated damages, interest, service payments, or other non-wage payments and reported by Form 1099. No amount of the Total Settlement Amount will revert to Defendant. Uncashed check amounts after all reasonable skip tracing attempts at contact will be returned to the Settlement Administrator for deposit with any applicable state unclaimed property office.

(b)     Plaintiffs' counsel will, no later than ten (10) days prior to the scheduled date of the final approval hearing, apply for payment of attorney's fees from the Total Settlement Amount in an amount up to thirty-three percent (33%), and for reimbursement of advanced litigation costs and expenses, which Defendant does not oppose. Plaintiffs' counsel will also, no later than ten (10) days prior to the scheduled date of the final approval hearing, request that the court approve an award of service payments of $7,500 to named plaintiff Deborah George, and $1,000 to each class representative of the State Classes, which request Defendant does not oppose, subject to approval by any required court. Any service payments awarded shall be in addition to payments that they shall receive as members of the FLSA Settlement Collective and, as applicable, State Settlement Classes; shall be distributed by the Settlement Administrator in separate checks mailed contemporaneously with the mailing of checks as set forth below; and shall be reported to state and federal taxing authorities as non-wage income on IRS Form 1099.

(c)     The Total Settlement Amount less the amount of Settlement Administrator's costs, Class Counsel's fees and costs, service payments to Named Plaintiffs, and estimated payroll taxes to be paid on the wage portions by the QSF, is defined as the "Net Settlement Amount."

(d)     The Net Settlement Amount has been apportioned as set forth below between the FLSA Collective, the members of the State Settlement Classes who did not previously opt-in but timely submit a Claim form to opt-in and receive their FLSA payment as part of the FLSA Settlement Collective, and the members of the State Settlement Classes who do not timely submit a Claim form, in a manner that accounts for non-opt-in State Settlement Class members' additional risks on FLSA claims by not opting in to the Action if the court were to deny approval of settlement and not equitably toll the running of the FLSA statute of limitations on their unpreserved FLSA claims, and for absent State Settlement Class members' additional risks of non-recovery if the court were to deny Rule 23 certification in whole or in part, deny state law class claims on the Claim as preempted, and/or rule that the running of the statute of limitations on members of the State Settlement Classes bars some or all of their recovery on the Claim. Payments will be calculated on a pro-rata basis based upon the formula set forth below under which Class Counsel negotiated their claims, which accounts for valuation differential between preserved FLSA claims by FLSA Collective members and unpreserved FLSA claims only made available by settlement subject to Court approval to State Settlement Class members, as well as variances in additional remedies available under certain state laws to employees who worked in those states, which allocation Defendant does not oppose. Settlement payments have been apportioned between wages and non-wage liquidated damages, interest and penalties as appropriate for the applicable state law claims, as set forth below. The apportionment and allocation of the Net Settlement Amount shall be as set forth in Section 10 below.

7.    **Settlement Administrator.**

(a)    Plaintiffs shall retain a Settlement Administrator of their choosing that is agreeable to Defendant, consent to which shall not be unreasonably withheld by Defendant (the "Settlement Administrator") to serve as Notice and Settlement Administrator of the settlement and perform all necessary services of administering this settlement including without limitation dissemination of Notices to eligible members of the State Settlement Classes, responding to FLSA Settlement Collective member and State Settlement Class member inquiries, calculation of payments due, distribution of awards from the Net Settlement Amount to eligible recipients, and tax reporting related to settlement.

(b)    The Settlement Administrator will be responsible for, in addition to any obligations agreed to by the Parties: establishing and maintaining a QSF, mailing of the Settlement Notice to the FLSA Settlement Collective and State Settlement Classes members, paying from the QSF the amount of attorneys' fees and costs awarded to Class Counsel, distributing any service payments, calculating the Settlement Checks, the settlement administration process, providing reminder notification to FLSA Settlement Collective and State Settlement Classes members who have not negotiated their Settlement Checks by forty-five days from the date of initial distribution, providing the Parties on a periodic basis with notice of the identity of individuals who timely opted-out of the Settlement or had his/her Notice of Settlement and Settlement Payment returned as undeliverable, calculating and paying all appropriate taxes to be paid by the QSF, complying with all applicable tax reporting obligations, including preparing and filing all applicable tax forms and amendments or modifications required thereto, distribution of the Settlement Checks to the FLSA Settlement Collective and State Settlement Class members, and preparing and submitting a final accounting of the Settlement attested to by an Affidavit or Declaration in support of final approval of the settlement.

(c)    The parties agree that the settlement notice procedure shall be as robust and accessible as possible, including known personal email and mailed notice, a settlement case website and the ability to electronically sign and submit claim forms directly through the administrator-operated website. The Settlement Administrator shall create and maintain the settlement-specific website pages containing relevant documents, information regarding the settlement and relevant procedures and deadlines, and maintain an online portal allowing eligible State Settlement Class members to electronically submit online a Claim Form to opt-in to the Action and receive their apportioned  FLSA Payment, which URL and instructions for electronic submission shall be contained in the applicable Notice including by hyperlink in the emailed Notice. The Settlement Administrator shall be responsible for validating claimants and may enact protocols or authentication measures designed to protect the security and integrity of the claims process.

(d)    The Settlement Administrator will provide bi-weekly reports to counsel for the Parties regarding the status of the mailing of the Settlement Notice and Settlement Checks, the settlement administration process, and distribution (and negotiation) of the Settlement Checks.

(e)     Academy agrees to cooperate with the Settlement Administrator and provide accurate information, to the full extent reasonably available, to assist in locating eligible settlement participants and ensuring delivery of the Settlement Notice and Settlement Checks. The Parties agree that it is their mutual goal to maximize participation in the settlement by delivery of all Settlement Notices and Settlement Payments, including but not limited to by providing notice by mail, reminder notice by mail and personal e-mail and/or telephone call, by skip tracing and resending Settlement Notices or Settlement Checks upon any received undeliverable notice, by issuing replacement Settlement Notices or Settlement Checks to any intended recipient timely requesting same or reporting failure to receive distributed Settlement Notice or Settlement Checks, and by maintaining the Settlement Administrator's settlement-specific website providing contact information for the Settlement Administrator and basic information and orders regarding the Lawsuit and Settlement.

(f)     Within ten (10) days after the Court grants Preliminary Approval of the Parties' proposed settlement or, if later, the date that any applicable bankruptcy court having jurisdiction over Plaintiff's claims approves the settlement, Academy shall provide the Settlement Administrator with the Class List from Academy listing the names, last known addresses, and last known non-Academy personal email addresses for all FLSA Settlement Collective and State Settlement Classes members (the "Class List").

(g)     No later than seven (7) days after the Court grants Preliminary Approval of the Parties' proposed settlement, or, if later, the date that any applicable bankruptcy court having jurisdiction over Plaintiff's claims approves the settlement, the Administrator shall have completed its calculations for determination of individual preliminary Settlement Amounts for the Settlement Notices and confirmation of accuracy by counsel to be completed within fourteen (14) days after the Court grants Preliminary Approval or, if later, the date that any applicable bankruptcy court having jurisdiction over Plaintiff's claims approves the settlement.

(h)     Within ten (10) days of receiving the Class List, the Settlement Administrator shall mail, via First Class United States mail, postage prepaid, and personal email (where known), the Court-approved Settlement Notices to all FLSA Settlement Collective and State Settlement Classes members using each individual's last known address provided by Defendant to the Settlement Administrator and Class Counsel, as updated by any more accurate information regarding recipient contact information provided to the Settlement Administrator by Class Counsel.

(i)     In order to provide the best notice practicable, the Settlement Administrator will do the following before mailing the Settlement Notice and Settlement Checks: (i) run the Class List through the U.S. Postal Service's National Change of Address database ("NCOA"); and, to the extent the Administrator deems necessary, (ii) perform address searches using public and proprietary electronic resources which collect their data from various sources such as utility records, property tax records, motor vehicle registration records (where allowed) and credit bureaus. The Settlement Administrator shall take all reasonable steps to obtain the correct address of eligible settlement participants for whom the Settlement Notice or Settlement Check is returned by the post office as undeliverable and shall attempt at least one re-mailing to corrected addresses and additionally contact any email address or telephone number discovered by skip tracing.  The Settlement Administrator may also use the last known email address and

10

last known telephone number to attempt to locate any eligible settlement participants whose Settlement Notice or Settlement Checks are returned as undeliverable.  The Settlement Administrator will notify counsel of any Settlement Notice or Settlement Check sent to any eligible settlement participants that are returned as undeliverable after the first mailing, as well as any such Settlement Notice or Settlement Checks returned as undeliverable after all subsequent mailing(s) as set forth in this Agreement. Eligible State Settlement Class members shall have a forty-five (45) day period from first issuance of Notice to timely submit an objection, or request for exclusion pursuant to that Notice. Eligible State Settlement Class members shall have a sixty (60) day period from first issuance of Notice to timely submit a Claim Form. Eligible State Settlement Class members for whom any re-mailing of a Notice is sent shall have the remainder of the sixty (60) day period or fourteen (14) days from re-mailing, whichever is longer, to timely submit a Claim Form pursuant to that Notice (the "Notice Period").

(j)     Participating Class Members to whom the Administrator re-mails any check that was returned undeliverable shall have the remainder of the ninety (90) day period or fourteen (14) days from re-mailing, whichever is longer, to timely cash, deposit, or otherwise negotiate their Settlement Check (the "Administration Period").

(k)     Forty-five (45) days before the close of the Administration Period, the Settlement Administrator shall notify any Participating Class Members who have not yet cashed, deposited or otherwise negotiated their Settlement Check. The funds from any Settlement Checks not cashed or otherwise negotiated by the close of the Administration Period shall become unclaimed funds subject to remittance to the applicable state agency in compliance with applicable state unclaimed property laws. No amount of uncashed settlement checks will revert to Defendant. Within the applicable deadlines the Settlement Administrator shall turn over any unclaimed funds to any applicable state agency.

(l)     Within ten (10) days after the end of the Administration Period, the Settlement Administrator shall provide to counsel an accounting of each Settlement Check which remained uncashed.

(m)     The Settlement Administrator shall provide counsel, at least bi-weekly, rolling updated information on settlement administration, and shall provide Class Counsel with identification of all settlement participants and class members and their updated address and contact information.

## 8.   <u>Notices Mandated by Statute.</u>

(a)     Upon the filing of the joint motion for preliminary approval, the Settlement Administrator with the assistance of Academy will provide all required CAFA notices to an "Appropriate Federal Official" and "Appropriate State Officials" (collectively, "Government Officials") no later than ten (10) days thereafter as required by 28 U.S.C. § 1715.

(b)     The Administrator, with the assistance of Academy, shall prepare the notices referenced in the preceding Section, which shall include as exhibits the Joint Motion, this Agreement, and all Complaints filed in the Action. Such mailings shall also include information

regarding the portion of the Net Settlement Amount that the Parties anticipate would be distributed to individuals living in each state following the Effective Date.

## 9.    Distribution of Net Settlement Amount.

(a)    Distribution of Notices By Mail and Email.  Within the time periods set forth above, the Settlement Administrator shall: (1) compile and distribute to members of the FLSA Collective who are not members of the State Settlement Classes a notice of the Parties' proposed settlement in the form attached as **Tab A** (the FLSA-Only Settlement Collective's "Settlement Notice"); (2) compile and distribute to members of the FLSA Collective who are also members of the State Settlement Classes a notice of the Parties' proposed settlement  in the form attached as **Tab B** (the FLSA and State Settlement Class member Collective's "Settlement Notice"); (3) compile and distribute to non-opt in Plaintiffs, who are  members of the State Settlement Classes and thereby eligible to become members of the FLSA Settlement Collective by timely returning a Claim form, a notice and opportunity to file an FLSA claim and notice of the Parties' proposed settlement and information on opt-out exclusion and binding releases upon receipt of Settlement Checks in the form attached as **Tab C** (the State Settlement Classes' "Settlement Notice"); and (4) as set forth above after 45 days following initial distribution of Settlement Checks, compile and distribute a reminder notice to any individual whose Settlement Checks remain uncashed, in the form attached as **Tab D** ("Reminder Notice"). The Settlement Administrator shall send such notices by certified First Class U.S. Mail and email (where known) to each member of the FLSA Collective and State Settlement Classes at such individuals' last known addresses pursuant to the procedure for ensuring maximum delivery accuracy set forth above. Any settlement mailing returned to the Settlement Administrator with a forwarding address shall be re-mailed by the Settlement Administrator within three (3) business days following receipt of the returned mail. The Settlement Administrator shall notify Academy and Class Counsel of any mailings returned as undeliverable without a forwarding address, and Academy shall promptly provide the Settlement Administrator with the intended recipient's Social Security Number and, if known from its personnel records, telephone number and any email addresses not previously provided.  The Settlement Administrator shall then undertake reasonable efforts such as skip traces to search for the correct address, and shall promptly re-mail the settlement notice packet to any newly found addresses.

(b)    The Settlement Notices to the State Settlement Class members shall provide that State Settlement Class members who are not FLSA Settlement Collective members and who wish to object to the Settlement must mail a written statement objecting to the Settlement to the Settlement Administrator on or before the Objection and Exclusion Deadline, including their name, address, telephone number, and email address (if applicable). The postmark date of the mailing shall be the exclusive means for determining that an objection is timely. The Settlement Administrator shall provide copies of any objections to the Parties' Counsel on a weekly basis. Persons who fail to serve timely written objections in full compliance with the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement.

(c)    Any member of the State Settlement Class who does not timely exclude themselves from the Parties' settlement prior to the date set forth in the Notice in full compliance with the exclusion requirements above, shall be deemed to have released the Released State Law

Claims as defined above. In addition, any member of the State Settlement Class who timely files a Claim form to opt-in and receive payment on their FLSA claim, shall be deemed to have consented to join the FLSA Collective Action and shall be deemed to have released the Released FLSA Claims as defined above. Any member of the State Settlement Class who does not timely submit a Claim form under the Notice procedures does not release any claims under the Fair Labor Standards Act by this settlement and the dismissal of this Action.

(d) Any member of the FLSA Collective who submits a request for exclusion from settlement of the State Class Claims shall nonetheless be deemed to have participated in the settlement by the authority delegated to the Representative Plaintiff in the original notice and consent process, and any such attempted election to opt-out of the settlement of State Class Claims shall be deemed invalid.

(e) Any member of the State Settlement Classes, who was not a member of the FLSA Collective, who submits a Claim to opt-in and receive payment on their FLSA claim but also submits a request for exclusion from the State Class Claims shall nonetheless be deemed to have participated in the settlement by the authority delegated by all opt-ins to the Representative Plaintiff on their FLSA collective action claims, and any such attempted election to opt-out of the State Class Claims while opting in to the FLSA claims in the Action shall be deemed invalid.

## 10.    **Calculation of Individual Awards.**

Each FLSA Collective member and each State Settlement Class member will receive a Notice as applicable based on their designated settlement group, citing the following amount estimates, which amount will be calculated with finality after the close of the settlement notice and claim period, pursuant to the formula below which will result in his or her "Settlement Amount":

(1) Calculate the "Distribution Amount" by subtracting from the Total Settlement Amount:

(i) any attorneys' fees and costs preliminarily approved by the Court to be paid to Class Counsel upon final approval of the settlement;

(ii) any service payments preliminarily approved by the Court to be paid to the Plaintiffs by the Court;

(iii) the Settlement Administrator's costs preliminarily approved by the Court; and

(iv) the employer share of required federal, state and local payroll taxes that shall be paid by the QSF to the applicable taxing authorities, to be calculated by the Settlement Administrator after determining the individual share amounts resulting from the calculations below.

(2)     Each FLSA Collective member will first be allocated from the Distribution Amount a settlement payment amount of $200, so that no settlement payment to a FLSA Collective member as a pro rata distribution of the Distribution Amount shall be for less than the gross amount of $200; and each State Settlement Class member who is not a FLSA Collective member will first be allocated a settlement payment amount of $100, such that no settlement payment to a State Settlement Class member who is not a FLSA Collective member as a pro rata distribution of the Distribution Amount shall be for less than the gross amount of $100;

(3)     The remaining Distribution Amount shall then be allocated based on each person's assigned settlement points as a pro rata percentage of all assigned settlement points, adjusted to provide for minimum amounts, based on the following:

(i)     <u>FLSA Collective members:</u>

(a)     Each FLSA Collective member shall be assigned 10 settlement points for each pay date reflected for that individual in the payroll records produced to Plaintiff prior to mediation (the "payroll records") from the FLSA Start Date until the First Inclusion Date;

(b)     Each FLSA Collective member for whom the payroll records reflected a "Worked in State Code" for California shall be assigned an additional two (2) settlement points for each pay date reflected for that individual in the payroll records from their State Law Start Date until the First Inclusion Date, to reasonably approximate an accounting for the additional interest, penalties and damages available under California law;

(c)     Each FLSA Collective member for whom the payroll records reflected a "Worked in State Code" for Arizona, Colorado, Idaho, Illinois, Maryland, Ohio, or Washington, shall be assigned one (1) settlement point for each pay date reflected for that individual in the payroll records from their applicable State Law Start Date until the First Inclusion Date, to reasonably approximate an accounting for the additional interest, penalties and damages available under those applicable state laws; and

(d)     Each FLSA Collective member who remained employed after the First Inclusion Date will receive one-half (.5) settlement point for each pay date reflected for that individual in the payroll records from the date of the First Inclusion Date through the Settlement Date, to reasonably approximate an accounting for the additional value of their claims for Signing Bonuses, Referral Pay, and/or Holiday Bonuses during that period.

(ii)  Remaining State Settlement Class members who are not FLSA Collective members:

(a)  Each State Settlement Class member who is not a FLSA Collective member shall be assigned five (5) settlement points for each pay date occurring from the State Law Start Date to the First Inclusion Date based on their dates of covered employment produced by Academy as AMC002030 prior to mediation (the "state class employment records"), to reasonably approximate an accounting for unpaid overtime claims adjusted by risk of non-certification (or decertification) and/or preemption of Rule 23 classes in the Action; and

(b)  Each State Settlement Class member who is not a FLSA Collective member for whom the state class employment records reflected a "Worked in State" code for California shall be assigned an additional one (1) settlement point for each pay date reflected in the state class employment records from their State Law Start Date to the First Inclusion Date, to reasonably approximate an accounting for the additional interest, penalties and damages available under California law;

(c)  Each State Settlement Class member who is not a FLSA Collective member for whom the state class employment records reflected a "Worked in State" code for Arizona, Colorado, Idaho, Illinois, Maryland, Ohio, or Washington, shall be assigned an additional one-half (.5) settlement point for each pay date reflected in the state class employment records from their State Law Start Date to the First Inclusion Date, to reasonably approximate an accounting for the additional interest, penalties and damages available under those applicable state laws; and

(d)  Each State Settlement Class member who is not a FLSA Collective member who remained employed in a covered position after the First Inclusion Date will receive a one-quarter (.25) settlement point for each pay date reflected for that individual in the state class employment records from the date of the First Inclusion Date through the Settlement Date, to reasonably approximate an accounting for the additional value of their claims for Signing Bonuses, Referral Pay, and/or Holiday Bonuses during that period.

(4)  The quotient, expressed as a percentage, resulting from dividing each such person's assigned settlement points by the total of all settlement points assigned to FLSA Settlement Collective members and State Settlement Class members, equals their individual pro rata percentage ("Pro Rata Percentage");

15

(5)     Each such person's Pro Rata Percentage is then multiplied by the Distribution Amount remaining after all deductions in Section 10(1), to equal their individual Preliminary Pro Rata Amount ("Preliminary Pro Rata Amount");

(6) The remainder of the Distribution Amount, after the preceding allocations as applicable, shall be allocated to all remaining FLSA Settlement Collective members and State Settlement Class members whose Preliminary Pro Rata Amounts exceeded the preceding applicable minimums, on a pro rata basis by dividing the amount that their Preliminary Pro Rata Amount exceeded the preceding applicable minimums by the total amount that all Preliminary Pro Rata Amounts exceeded the preceding applicable minimums, and multiplying that pro rata percentage by the Distribution Amount remaining after the preceding deductions in Sections 10(1) and (2), and each such individual's resulting amount plus their initially allocated minimum settlement payment amount in Section 10(2) above shall constitute their individual Preliminary Final Settlement Payment from the pro rata distribution of the total Distribution Amount ("Preliminary Final Settlement Payment") to be reflected on their applicable Notice.

(7)     A FLSA Collective member will receive payment from the Distribution Amount for FLSA Settlement Collective members based on the individual's settlement points in subsection 3(i) above.

(8)     If a State Settlement Class member who is not a FLSA Collective member timely submits a Claim form under the Notice procedures, that State Settlement Class member will receive payment from the Distribution Amount for FLSA Settlement Class members based on the individual's settlement points in subsection 3(ii) above. If a State Settlement Class member who is not a FLSA Collective member does not timely submit a Claim form under the Notice procedures, that State Settlement Class member will receive payment from the Distribution Amount of one-half their Preliminary Final Settlement Payment ("State Law Only Payment"), which notification and amount shall also be reflected on their applicable Notice. The amounts (i.e., one-half of the individual's Preliminary Final Settlement Payment for each) unclaimed by State Settlement Class members by failing to timely submit a Claim form under the Notice procedures, and the amounts (i.e., the allocated $100 minimum payment amounts) unclaimed as a result of an individual removing themselves from the State Settlement Class by timely filing a request for exclusion from the Settlement in compliance with this Agreement, will be reapportioned for distribution among the FLSA Settlement Collective members based on their final pro rata percentages, calculated by their applicable settlement points under subsection 3(i) or 3(ii) above as applicable, of the remainder of the Distribution Amount after accounting for the State Law Only Payments to State Settlement Class members who are not FLSA Settlement Collective members.

16

(9)     The Settlement Administrator is authorized to manage the QSF, complete the calculations set forth herein and any recalculations due to class member exclusions as set forth above, reallocate as provided herein as to any uncashed funds, and make any other reasonably necessary adjustments to properly account for the QSF's payment of payroll taxes and adjust for any unintentional errors or omissions in the calculation methodology described herein, in consultation with and with reasonable deference to input from Class Counsel.

## 11.    Final Approval and Funding of Settlement Account.

(a)     Within ten (10) days after the end of the Notice Period, the Settlement Administrator shall calculate the final individual awards due to each Participating Class Member in accordance with this Agreement, and to the recipients of all other payments that will be proposed to the Court as part of the settlement, including proposed attorneys' fees and costs and incentive payments to the named plaintiffs.  The Parties shall within seven (7) days confirm the accuracy of the same in writing, and within fourteen (14) days of such confirmation (but not less than one-hundred (100) days after the filing of the Joint Motion for preliminary approval), the Parties shall file a Joint Motion for Stipulated Judgment Entering Final Approval of Class and Collective Action Settlement ("Final Approval Motion"), requesting entry of stipulated judgment pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) and *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304 (11th Cir. 2013).

(b)     Within fourteen (14) days of the Effective Date of the settlement, as defined herein, Academy shall deposit the Total Settlement Amount into an account designated by and under the control of the Administrator, designated as a QSF for payment to the settlement participants.

(c)     Within fourteen (14) days of receipt of the Total Settlement Amount into the QSF, the Settlement Administrator shall distribute the payments required herein to Class Counsel, the named Plaintiffs, and the Participating Class Members by mailing checks, less applicable taxes and withholdings as described below, to each Participating Class Member and to Class Counsel as applicable, pursuant to the calculations herein.

## 12.    Tax Allocation of Payments to Participating Settlement Members.

(a)     The Settlement Administrator shall withhold from QSF payments to Participating Class Members taxes and other required withholdings under applicable law. The Parties agree that fifty percent (50%) of the amount paid to each FLSA Settlement Collective member who did not work in the states included in the State Class Claims shall be treated as wages, and the remaining fifty percent (50%) shall be treated as liquidated/statutory damages for tax purposes. The Parties agree that one-third (1/3) of the amount paid to each FLSA Settlement Collective member who worked in the states included in the State Class Claims, and each participating State Settlement Class member, shall be treated as wages, and the remaining two-thirds (2/3) shall be treated as non-wage liquidated/statutory damages, interest and/or penalties for tax purposes, which properly accounts for the additional liquidated/statutory damages, interests, and other penalties in excess of FLSA liquidated damages under those applicable

17

states' wage laws.  The Settlement Administrator shall determine the appropriate amount of tax withholdings under applicable law with respect to the Participating Class Members' back wage payments.

13.   **Publicity.**

(a)   Plaintiff shall not issue any press release to the reporting media regarding this settlement, or purposely cause another to do so.

(b)   Nothing in this Agreement shall prohibit counsel from complying with the applicable Georgia Rules of Professional Conduct, including GRPC 1.4 regarding communications.

14.   **Releases.**

(a)   Upon the Effective Date, all FLSA Settlement Collective members shall be deemed to fully, forever, irrevocably and unconditionally release, remise, and discharge Academy, its parents, divisions, subsidiaries, predecessors and successors, and its and their directors, officers, members, fiduciaries, insurers, employees, attorneys and agents (each in their individual and corporate capacities) (collectively referred to as the "Released Parties"), from any and all suits, actions, causes of action, claims, or demands against the Released Parties or any of them, limited to the release of Released FLSA Claims and (for State Settlement Class members) Released State Law Claims, as defined in <u>Section 1</u>, above. No other claims are released. If a State Settlement Class member does not timely submit a Claim form under the Notice procedures, that individual does not release any claims whatsoever under the Fair Labor Standards Act by this settlement, although Academy retains any defenses to unreleased FLSA claims based on the Claim of (i) setoff, or (ii) that the amount paid as the State Law Only Payment equals or exceeds the maximum possible amount available under the FLSA on the Claim such that any recovery under the FLSA would constitute a prohibited double recovery. The parties agree that the assertion and release of these claims and participation in this Action under this settlement shall have no res judicata or other claim preclusion effect as to claims not explicitly released herein.

(b)   Upon the Effective Date, all State Settlement Class members who do not timely submit a Claim form under the Notice procedures to become a FLSA Settlement Collective member, and who do not submit a request for exclusion from the State Settlement Class shall be deemed to fully, forever, irrevocably and unconditionally release, remise, and discharge the Released Parties from any and all suits, actions, causes of action, claims, or demands against the Released Parties or any of them, limited to the release of Released State Law Claims, as defined in <u>Section 1</u>, above. No other claims are released, and the parties agree that the assertion and release of these claims and participation in this Action under this settlement shall have no res judicata or other claim preclusion effect as to claims not explicitly released herein.

(c)   Upon timely filing of an Claim form, a State Settlement Class member who was not a FLSA Collective member shall be deemed to have consented to join the FLSA Collective Action and to fully, forever, irrevocably and unconditionally release, remise, and

18

discharge the Released Parties, from any and all suits, actions, causes of action, claims, or demands against the Released Parties or any of them, limited to the release of Released FLSA Claims and Released State Law Claims, as defined in <u>Section 1</u>, above. No other claims are released, and the parties agree that the assertion and release of these claims and participation in this Action under this settlement shall have no res judicata or other claim preclusion effect as to claims not explicitly released herein.

(d)     Upon the Effective Date, Academy releases any claims against a Participating Class Member arising out of his or her assertion of the Released FLSA Claims and/or Released State Law Claims, and releases any claims against a Participating Class Member for recoupment or reimbursement of severance payments or sign-on bonuses paid. Academy further agrees that participation in this settlement shall not be deemed to violate any prior release or other covenant not to sue agreement between a Participating Class Member and Academy.

(e)     The preceding release agreements between the parties shall be conspicuously included in the applicable Notices.

(f)     <u>No Effect on Subsequently Filed California Lawsuit</u>.  Nothing in this Agreement shall be interpreted to affect in any way the rights, obligations, settlement, agreed certification of a California settlement class, or status of any party or proceeding of the subsequently filed consolidated lawsuits captioned *Vazquez v. Academy Mortgage Corporation*, Consolidated Lead Case No.: 34-2016-00191285, and/or *Rafferty v. Academy Mortgage Corporation*, Consolidated Case No.: 34-2017-00214174, in the Superior Court of Sacramento County, California (the "California Litigation"). Without limiting the foregoing, the parties expressly agree that the certification of any class action under this Agreement shall not in any way affect the certification of any class action in the California Litigation.

## 15.     <u>Dismissal of Action After Final Approval.</u>

The proposed Final Approval Order shall enter stipulated judgment giving final approval to this Settlement Agreement and provide that upon Academy's satisfaction of its payment obligations after the Effective Date, the Action shall be dismissed with prejudice and without costs other than as accounted for herein, with no *res judicata* or other claim preclusion effect as to claims not specifically released under this Agreement, with the Court retaining jurisdiction over the case for purpose of ensuring compliance with the terms of this Settlement Agreement and any order the Court issued in connection with it.

## 16.     <u>Termination of Settlement Agreement.</u>

Academy has the right, but not the obligation, to provide written notice of intention to terminate the settlement to Class Counsel if exclusions are timely submitted by at least 10% of the potential State Settlement Class members (who were not FLSA Settlement Collective members) for whom the state employment records reflect a "Worked in State" code for California, Arizona and Colorado in the aggregate, within seven (7) days of notification from the Administrator of the exclusions satisfying the condition precedent herein. If Academy timely notifies Class Counsel of its intention to terminate the settlement hereunder, the parties are required to engage in the subsequent negotiation and mediation contemplated by the Dispute Resolution procedures set forth in <u>Section 26</u> below.

17.   **Non-Waiver.**

No delay or omission by either Party in exercising any right under this Agreement shall operate as a waiver of that or any other right. A waiver or consent given by a Party on any occasion shall be effective only in that instance and shall not be construed as a bar or waiver of any right on any other occasion.

18.   **Complete Agreement.**

Other than as stated herein, the Parties warrant that no representation, promise, or inducement has been offered or made to induce any Party to enter into this Agreement and that they are competent to execute this Agreement and accept full responsibility therefore. This Agreement contains and constitutes the entire understanding and agreement between the Parties and supersedes all previous oral and written negotiations, agreements, commitments, and writings in connection therewith. This Agreement may not be amended or modified except by a writing signed by authorized representatives of all Parties.

19.   **Knowing and Voluntary Agreement.**

Plaintiffs agree that they are entering into this Agreement knowingly, voluntarily, and with full knowledge of its significance. Plaintiffs further affirm that neither of them has been coerced, threatened, or intimidated into signing this Agreement; that they have been advised to consult with an attorney; and that each of them in fact has consulted with an attorney before signing this Agreement.

20.   **Notices.**

Any notices (other than notices to be distributed by Administrator) to be issued to a party pursuant to the terms of this Agreement shall be sent to the party at the address of their respective counsel of record in the Action.

21.   **Severability.**

If any part of this Agreement is found to be illegal, invalid, inoperative or unenforceable in law or equity, such finding shall not affect the validity of any other provisions of this Agreement, which shall be construed, reformed and enforced to effectuate the purposes thereof to the fullest extent permitted by law.  If one or more of the provisions contained in the Agreement shall for any reason be held to be excessively broad in scope, subject matter or otherwise, so as to be unenforceable at law, the Parties agree that such provision(s) shall be construed to be limited or reduced so as to be enforceable to the maximum extent under the applicable law.

22.   **Execution, Signatories, and Counterparts.**

The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if the Parties had signed the same instrument. Execution

by facsimile, electronic signature, or signed .pdf delivered by email shall be deemed effective as if executed in original. Each person executing this Agreement, including execution on behalf of the corporate entity, warrants and represents that such person has the authority to do so.

**23.**   **Extension of Time.**

The Parties may mutually agree upon a reasonable extension of time for deadlines and dates reflected in this Agreement, without further notice.

**24.**   **Governing Law.**

This Agreement shall be governed by Georgia law, without regard to that state's choice of law provisions. The Parties also hereby submit to the jurisdiction of the Court in the Action for all purposes relating to the review, approval and enforcement of the terms of this Agreement.

**25.**   **No Effect on Subsequently Filed California Lawsuit.**

Nothing in this Agreement shall be interpreted to affect in any way the rights, obligations, settlement, agreed certification of a California settlement class, or status of any party or proceeding of the subsequently filed and consolidated lawsuit entitled, *Caryn Rafferty, et al.  v. Academy Mortgage Corporation,* Case No. 34-2016-00191285-CU-OE-GDS [LEAD] Consolidated with Case No. 30-2017-00214174-CU-OE-GDS, in the Superior Court of the State of California for the County of Sacramento, (the "California Litigation"). Without limiting the foregoing, the parties expressly agree that the certification of any class action under this Agreement shall not in any way affect the certification of any class action in the California Litigation.  This provision is in addition to, and does not supersede or void, the parties' signed agreement that the California Litigation shall have no effect on the Action, class certification in the Action, and settlement of the Action.

**26.**   **Dispute Resolution.**

If any disputes arise out of the finalization of the settlement documents or the settlement itself, the parties agree to work in good faith to attempt to resolve those disputes in favor of compromise resulting in an approved agreement. The parties will first attempt to resolve any such disputes by good faith communication and negotiation between counsel, and if not resolved, will then work in good faith to be resolved by Steve Pearl by way of expedited telephonic mediation.

**IN WITNESS WHEREOF**, the Parties voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

PLAINTIFFS, individually and on behalf of            ACADEMY MORTGAGE CORPORATION
others similarly situated,                                          (UT),

_____
Deborah George
Dated: _____

*Susan T. Schouten*

_____
Susan Schouten
Dated:   10/25/18   _____

[Name and Title]
Dated: _____

_____
Lisa Rogers Stock
Dated: _____

_____
Dennis Lonergan
Dated: _____

_____
Karen Fitzpatrick
Dated: _____

_____
Amicie Crayton
Dated: _____

_____
Pamela Ogden
Dated: _____

_____
Colleen Korb
Dated: _____

_____
Pamela Johnson
Dated: _____

_____
Deborah George
Dated: _____

_____
[Name and Title]
Dated: _____

_____
Susan Schouten
Dated: _____

_____
Lisa Rogers Stock
Dated: _____

_Dennis Lonergan_
_____
Dennis Lonergan
Dated: _October 23, 2018_

_____
Karen Fitzpatrick
Dated: _____

_____
Amicie Crayton
Dated: _____

_____
Pamela Ogden
Dated: _____

_____
Colleen Korb
Dated: _____

_____
Pamela Johnson
Dated: _____

22

_____
Deborah George
Dated: _____

[Name and Title]
Dated: _____

_____
Susan Schouten
Dated: _____

_____
Lisa Rogers Stock
Dated: _____

_____
Dennis Lonergan
Dated: _____

_____
Karen Fitzpatrick
Dated: _____

_____
Amicie Crayton
Dated: _10/20/18_____

_____
Pamela Ogden
Dated: _____

_____
Colleen Korb
Dated: _____

_____
Pamela Johnson
Dated: _____

Deborah George
Dated: _____

[Name and Title] _____, General Counsel
Dated: _____

Susan Schouten
Dated: _____

Lisa Rogers Stock
Dated: _____

Dennis Lonergan
Dated: _____

Karen Fitzpatrick
Dated: _10-22-18_

Amicie Crayton
Dated: _____

Pamela Ogden
Dated: _____

Colleen Korb
Dated: _____

Pamela Johnson
Dated: _____

22

_____
Deborah George
Dated: _____

_____
Susan Schouten
Dated: _____

_____
Lisa Rogers Stock
Dated: _____

_____
Dennis Lonergan
Dated: _____

_____
Karen Fitzpatrick
Dated: _____

_____
Amicie Crayton
Dated: _____

_____
Pamela Ogden
Dated: _____

_____
Colleen Korb
Dated: _____

_Pamela Beth Johnson_
Pamela Johnson
Dated: _10/22/18_

_____
[Name and Title]
Dated: _____

_____
Deborah George
Dated: _____

[Name and Title]
Dated: _____


_____
Susan Schouten
Dated: _____


_____
Lisa Rogers Stock
Dated: _____


_____
Dennis Lonergan
Dated: _____


_____
Karen Fitzpatrick
Dated: _____


_____
Amicie Crayton
Dated: _____

_____
Pamela Ogden
Dated: 10|22|18


_____
Colleen Korb
Dated: _____


_____
Pamela Johnson
Dated: _____

Deborah George
Dated: 10/22/18

[Name and Title]
Dated: 12/10/18

Susan Schouten
Dated: _____

Lisa Rogers Stock
Dated: _____

Dennis Lonergan
Dated: _____

Karen Fitzpatrick
Dated: _____

Amicie Crayton
Dated: _____

Pamela Ogden
Dated: _____

Colleen Korb
Dated: _____

Pamela Johnson
Dated: _____

22

Deborah George
Dated: _____


[Name and Title]
Dated: _____


Susan Schouten
Dated: _____


Lisa Rogers Stock
Dated: 10/20/18


Dennis Lonergan
Dated: _____


Karen Fitzpatrick
Dated: _____


Amicie Crayton
Dated: _____


Pamela Ogden
Dated: _____


Colleen Korb
Dated: _____


Pamela Johnson
Dated: _____

_____
Deborah George
Dated: _____

_____
[Name and Title]
Dated: ___10/10/18___

_____
Susan Schouten
Dated: _____

_____
Lisa Rogers Stock
Dated: _____

_____
Dennis Lonergan
Dated: _____

_____
Karen Fitzpatrick
Dated: _____

_____
Amicie Crayton
Dated: _____

_____
Pamela Ogden
Dated: _____

_____
Colleen Korb
Dated: 10/20/18

_____
Pamela Johnson
Dated: _____

EXHIBIT A

# TOLLING AGREEMENT

This Tolling Agreement (the "Agreement") is made by and between Academy Mortgage Corporation (UT) ("Academy" or "Defendant"), by and through their legal counsel of record, and Plaintiff Deborah George ("Plaintiff"), individually and on behalf of the putative members of the alleged State Law Classes ("State Law Classes") as defined in Paragraph 1 of the attached draft First Amended Complaint ("Amended Complaint") who worked for Academy in the applicable states identified by the State Law Classes ("Relevant States"), and on behalf of the Putative FLSA Collective as defined in Paragraph 2(b) below, by and through their legal counsel (collectively the "parties").

WHEREAS, Plaintiff was an employee of Academy who filed and joined a lawsuit ("Lawsuit") for unpaid overtime under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA" claims), and who has as of the date of this Agreement notified Defendant in writing by the attached Amended Complaint of the claims she intends to file regarding the State Law Classes in *George v. Academy Mortgage Corporation (UT)*, No. 1:16-cv-00471-CAP (N.D. Ga.) (the "Litigation");

WHEREAS Plaintiff contends, and Academy disputes, that Plaintiff is similarly situated to the putative members of the State Law Classes who work or worked at an Academy location during the relevant periods identified in Paragraphs 40-60 of the Amended Complaint (the "relevant periods") and who worked in excess of the maximum hours provisions of the applicable state law in one or more workweeks during the applicable relevant period and received bonuses, commissions, and/or incentive premium payments that were not included in the calculation of the regular rate upon which Academy calculated their overtime premiums (collectively, the "bonuses") – i.e., who did not receive the overtime payments in the amount required by the applicable state law based on those bonuses, and Plaintiff contend, and Academy disputes, that the Litigation should be maintained as a hybrid collective action under Section 216(b) of the FLSA and class action under Federal Rule of Civil Procedure 23;

WHEREAS Plaintiff and Academy, by and through their counsel, have agreed to enter into and rely upon this Tolling Agreement in connection with the parties' Joint Stipulation [Dkt. 20] in the Litigation, and possible amendments to the Complaint and/or Answer in the Litigation;

NOW THEREFORE, by foregoing certain rights and for good and sufficient consideration, the adequacy of which is hereby acknowledged by all parties, Plaintiff and Academy hereby agree as follows:

1. <u>Tolling Provision</u>.  No statute of limitations on any claims arising under the State Law Claims identified for the State Law Classes in the attached Amended Complaint shall run against any member of the above-referenced putative State Law Classes, and the same shall be tolled, during the Tolling Period as defined in Paragraph 2 below, and no party shall put forward or rely upon the period of time during the Tolling Period as a bar or laches or for any other purpose to defeat such a claim based on the laws of the alleged State Law Claims in this or any other litigation or proceeding involving the wage claims of the putative members of the State Law Classes as

alleged in the attached Amended Complaint. This paragraph does not bar use of this Agreement to enforce this Agreement.

2. Tolling Period, Term and Duration.

    a. The Tolling Period is in effect beginning on September 1, 2016, the date Defendant was provided with the attached Amended Complaint, and shall continue through and including the later applicable deadline for Plaintiff to amend the Complaint in the litigation: i.e., the later of (i) sixty (60) days after the end of the opt-in period pursuant to the Court's Order of July 13, 2016 [Dkt. 19]in the Litigation, or (ii) thirty (30) days after the mediation conclusion date as agreed by the parties in the Joint Stipulation [Dkt. 20] filed in the Litigation (the "Tolling Period"). Without in any way limiting the legal effect of the foregoing, the parties agree that the State Law Claims in the Amended Complaint will be treated as if filed in the Litigation on September 1, 2016, thereby entitling the putative members of the State Law Classes to the tolling required by *American Pipe and Constr. Co. v. Utah*, 414 U.S. 538 (1974) from that date throughout the Tolling Period regardless of whether a putative member of the State Law Classes opts out of the class or ceases to be a member upon denial of class certification. The term and duration of this Agreement and its enforceability shall survive the conclusion of the Tolling Period. At the end of the opt-in period should there be no named plaintiff represented by Plaintiff's counsel for a particular state in which Plaintiff has made a State Law Claim in the Amended Complaint, Defendant does not waive any defense it would have to that particular state's State Law Class.

    b. Separately from and in addition to the above, the parties have also agreed that any days between when the class list was initially provided to the Notice Administrator on September 8, 2016 and when the final, confirmed-as-accurate class list is provided to the Notice Administrator will not be counted against the class defined as the individuals on the final class list provided to the Notice Administrator (the "FLSA Putative Class") as running against the statute of limitations as to their FLSA claims.

3. Use of Agreement. Except as specifically stated in Section 1 herein, this Agreement shall not be deemed to constitute a waiver of any other rights, claims or defenses of the parties to this Agreement, nor shall it be deemed to limit or affect any defense based upon the statute of limitations, laches or any other limitations (whether equitable, statutory, contractual or otherwise) not otherwise modified by this Agreement to the extent such defense could have been asserted on or before the effective date of this Agreement. Nothing contained in this Agreement shall be deemed as an admission by any party with respect to any allegations or claims. The parties expressly agree that this Agreement shall not in any way bar Plaintiff from seeking, requesting, or otherwise arguing for relation back or equitable tolling of the State Law Claims to any date earlier than the first effective date of this Agreement, including but not limited to the original filing date of the Complaint in the Litigation; nor shall this Agreement in any way bar Defendant from raising any defense or other opposition to relation back or equitable tolling of the State Law Claims to any such earlier date; however, the fact that the parties reached this Agreement may not be used as a basis for denying or otherwise opposing relation back or

equitable tolling to any earlier date. The parties further agree that nothing in this Agreement shall in any way bar Plaintiff from seeking, requesting, or otherwise arguing for equitable tolling of the FLSA claims at issue in the Litigation, nor shall this Agreement in any way bar Defendant from raising any defense or other opposition to such equitable tolling of FLSA claims; however, the fact that the parties reached this Agreement may not be used as a basis for denying or otherwise opposing equitable tolling. The parties agree that Defendant requested that Plaintiff not file the Amended Complaint at this time, and instead proceed under this Agreement,[1] and that in exchange for Plaintiff's agreement to do so Defendant agrees to treat the State Law Claims in the Amended Complaint as if filed on September 1, 2016, and agrees not to contend or otherwise argue that any other action alleging any of the same FLSA or State Law Claims as set forth in the attached Amended Complaint that was filed after September 1, 2016 has "first filed" status over the claims in the Amended Complaint in the Litigation. The parties agree to take all actions reasonably necessary to enforce this Agreement, and to effectuate the intent of the parties in making this Agreement that the State Law Claims will be tolled throughout the Tolling Period to the fullest extent of the law and the Amended Complaint will at all times be treated as if it had been filed in the Litigation on September 1, 2016.

4. Additional Agreements. In order to effectuate the intent of the Joint Stipulation [Dkt. 20] filed in the Litigation, the parties further agree as follows:

    a. Limited to only those of the Relevant States in which Defendant employed one or more individual who timely filed an opt-in Consent as of the conclusion of the opt-in proceeding approved by the Court's Order [Dkt. 22], Defendant shall provide Plaintiff's counsel of record with an accurate written statement of the number of putative members of the State Law Classes for each of those Relevant States (as limited herein) not less than fourteen (14) days prior to the start of the in-person mediation referenced in the Joint Stipulation [Dkt. 20] filed in the Litigation, and for each putative member of the State Law Classes for those Relevant States (as limited herein) shall provide:

        i. A computer readable database and/or comprehensive Excel or similarly electronically accessible spreadsheet identifying by Employee ID or other unique identifying number each putative member of the State Law Classes and containing their start date(s) and end date(s) (limited to dates within the relevant periods for the applicable State Law Claims as set forth in the Amended Complaint) for their work in any full-time non-exempt bonus-eligible or incentive compensation-eligible position; and

        ii. for each type of bonus or incentive compensation paid during the relevant periods for the applicable State Law Claims as set forth in the Amended Complaint, (i) a step-by-step explanation of the calculation method for

---

[1] The agreement not to file the Amended Complaint at this time and instead proceed under this Agreement relates and is limited to amending the original Complaint to add additional state law claims as alleged by the named Plaintiff, but does not preclude amending the original Complaint at any time to add one or more other plaintiffs who assert such state law claims applicable to the state(s) where they worked for Defendant, and nothing in this agreement shall be deemed to interfere with counsel's ethical obligations to protect client interests (including but not limited to by filing to amend pleadings).

overtime paid pursuant to the particular state law at issue during the relevant periods prior to the First Inclusion Date (as that term is defined by the Joint Stipulation [Dkt. 20] filed in the Litigation); (ii) a step-by-step explanation of the calculation method for determining the bonus or incentive compensation amounts, including the week(s) of service compensated by such bonus or incentive compensation; and (iii) a step-by-step explanation of the overtime amounts paid on the bonus or incentive compensation amounts on the First Inclusion Date (as that term is defined by the Joint Stipulation [Dkt. 20]) under the applicable state law, and written confirmation that the calculation method used on the First Inclusion Date has continued through the date of confirmation or written explanation of any changes to the calculation method since the First Inclusion Date.

b.   Defendant shall provide Plaintiff with any non-privileged[2] audits, evaluations, investigations, and reports conducted by, for, or otherwise involving Defendant's management personnel, regarding the inclusion or exclusion of bonuses or incentive compensation in the calculation of overtime premiums paid, and/or regarding the legality of payroll practices regarding inclusion or exclusion of bonuses or incentive compensation in calculating overtime pay, applicable in any way to the relevant periods at issue in the Amended Complaint that may be relied upon to establish a "good faith" defense to any FLSA liquidated damages claim or defense to willfulness; and

c.   The parties have agreed that Defendant will not engage in *ex parte* attempts to settle or otherwise moot the claims of the putative members of the FLSA collective as set forth in the Complaint prior to the mediation conclusion date (as that term is defined in the Joint Stipulation [Dkt. 20] filed in the Litigation). Defendant further agrees that it will not engage in any substantive settlement discussions as to the claims of the putative members of the FLSA collective as asserted in the Amended Complaint (including federal and state law claims) without informing Plaintiff's counsel and affording Plaintiff the opportunity to participate in any potential settlement discussions or mediation proceeding.  Specifically with regard to *Vazquez v. Academy*

---

[2] Plaintiff contends that for the limited purposes of this Agreement, documents that are "non-privileged" shall, in addition to the ordinary meaning of that legal term, also be interpreted to include documents that would otherwise be privileged as a matter of law if Defendant intends to assert a "good faith" defense to FLSA liquidated damages based in whole or in any part on content or communications related to such documents (or conversely if the documents contain information or evidence that may reasonably contradict any "good faith" defense to FLSA liquidated damages that Defendant intends to assert), or if Defendant intends to rely in whole or in any part on content or communications related to such documents in defending Plaintiff's allegations of a "willful" violation of the FLSA (or conversely if the documents contain information or evidence that may reasonably contradict any such defense to a "willful" violation that Defendant intends to assert). *See, e.g., Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1271–72 (10th Cir. 2011) ("an employer may not selectively listen to and then, in good faith, rely upon only one of many issues discussed simply because it sought discrete legal advice on one potential FLSA violation and viewed all other advice as irrelevant to its original, limited inquiry."); *Scott v. Chipotle Mexican Grill, Inc.*, 67 F. Supp. 3d 607, 611 (S.D.N.Y. 2014) ("if (1) a defendant claims the defense of good faith, and (2) that claim can only be scrutinized by examining the disputed communications, then that defendant has waived the privilege."). The parties have not reached agreement on Plaintiff's contention.

*Mortgage*, No. 34-2016-00191285-CU-OE-GDS (Cal. Sup. Ct.) (the "*Vazquez* case"), Defendant acknowledges the *Vazquez* case was filed after Plaintiff filed her Complaint in this Litigation. Defendant further acknowledges that the plaintiff in the *Vazquez* case did not receive any of the bonuses as defined above.

5. <u>Modification</u>.  This Agreement can be modified only in a writing mutually agreed to and signed by the parties. This Agreement shall constitute the entire understanding between the parties concerning the subject matter of this Agreement and supersedes and replaces all prior negotiations, proposed agreements, and agreements, relating to this subject; except, however, that this Agreement shall have no effect on the tolling provision agreed to by the parties as set forth in the Joint Stipulation [Dkt. 20] filed in the Litigation.

6. <u>Successors and Third Party Beneficiaries</u>.  This Agreement shall bind and benefit each of the parties and their respective predecessors, successors and assigns, and is expressly intended to apply to and benefit the members of the putative State Law Classes as third party beneficiaries in this or any other litigation or proceeding against Academy or its successors and assigns regarding any of the same FLSA or State Law Claims raised against Academy, as those claims are set forth in the attached Amended Complaint. This Agreement expressly creates a right to enforce the benefit of this tolling agreement for each member of the putative State Law Classes. It shall not be a defense to the enforcement of the rights of a putative member of the State Law Classes created by this Agreement that the individual is not a signatory to this Agreement or that no class had been certified as of the date of this Agreement, and this Agreement shall have the same effect on and benefit to the members of the putative State Law Classes as if each was a signatory hereto after a court had certified his or her claims to proceed as a class action. The provisions in this paragraph similarly apply with equal force to the tolling of FLSA claims for the FLSA Putative Class in Paragraph 2(b) above.

7. <u>Governing Law</u>.  The contractual terms of this Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Georgia applicable to contracts executed within the State of Georgia.

8. <u>Execution of Counterparts</u>.  Separate counterparts of this Agreement may be executed by the parties with the same force and effect as if all such parties had executed a single copy of this Agreement.

9. <u>Authority to Bind</u>.  Each Counsel executing this Agreement represents and warrants that he/she has been authorized to enter into this Agreement on behalf of the party on whose behalf he/she signed and that signatory has full and complete authority to do so.

10. <u>Notices</u>.  Any notice, request, instructions or other document to be provided hereunder by either party to the other shall be in writing and delivered personally or mailed by certified mail, postage prepaid, return receipt requested (such personally delivered or mailed notice to be effective on the date actually received) or by electronic means to such counsel's address of record on file with the Court in the Litigation.

5

EXECUTED: October 18, 2016

By: _____
Counsel for Plaintiff

EXECUTED: October 17, 2016

By: _____
Counsel for Academy

**Tab A**

**(Notice of Settlement: FLSA-Only Settlement Collective)**

**NOTICE OF SETTLEMENT**

*George, et al v. Academy Mortgage Corporation (UT)*, No. 1:16-cv-00471-CAP, in the U.S. District Court for the Northern District of Georgia (the "Litigation")

*A court authorized this notice.  This is not a solicitation from a lawyer.*

To: [Name of FLSA-Only Settlement Collective Member]

You are receiving this Notice because you submitted a Consent to opt-in to the Litigation, in response to a notice you received because you were paid as a non-exempt employee by Defendant Academy Mortgage Corporation (UT) ("Academy" or "Defendant") and your overtime pay received was calculated based on your hourly rate of pay, but you also received bonuses or other similar production/incentive compensation (each a "bonus" and collectively "bonuses") for work performed in an overtime week (i.e., a week in which you worked more than forty (40) hours in a workweek) that was not included in the calculation of your rate of pay for overtime premiums when Defendant calculated and paid overtime premiums for the overtime hours recorded as worked during the time period in which the bonus was earned, in one or more pay periods from the date three years preceding the date you submitted your Consent (your "FLSA Collective Start Date") through the end of the relevant period defined below (the "Claim").[1]  Plaintiffs in this Litigation asserted the Claim alleging that this resulted in underpayment of overtime pay individually and on your behalf in an alleged collective action under the Fair Labor Standards Act ("FLSA"), and on behalf of similarly situated individuals who worked in the states of Arizona, California, Colorado, Idaho, Illinois, Maryland, Ohio, and Washington as an alleged class action under the applicable wage and hour laws of those states ("state law classes").  Defendant disputes the allegations and admits no liability.  Nonetheless, Defendant in this Litigation has agreed to settle the Claim for all individuals who filed opt-in Consents to join this Litigation by complying with the procedures set forth in this Notice, and for the members of the state law class claims who did not file opt-in Consents to join this Litigation.  Under the Court-authorized Notice process, the Notice you received and the Consent you submitted to join the Litigation authorized the representative plaintiff to make settlement decisions on behalf of you and the collective group. The parties reached a settlement, and the Court preliminarily approved the settlement on ▓▓▓▓▓▓▓▓.  **You are, therefore, automatically a participant in this settlement, and you do not need to take any action in**

---

[1] Because you were already paid overtime premiums in full for hours recorded as worked over 40 in a workweek at time-and-a-half based on your hourly rate of pay, and because the bonus amounts at issue in the Litigation were paid for all of your hours recorded as worked in the applicable bonus period (both regular and overtime hours), the only additional overtime pay at issue for your FLSA claims in the Litigation was the additional one-half overtime premium allegedly owed for overtime hours based on bonuses received. As a simple example (based on purely hypothetical figures), if you had received a $100 monthly per-file production bonus for a month in which you worked four 50-hour weeks (i.e., a $100 bonus paid for working 200 hours in the month (160 regular non-overtime hours plus 40 overtime hours)), the total amount of additional one-half overtime premiums allegedly owed for that bonus amount under the FLSA claim being settled in this Litigation was $10 for that month ($ $\frac{100}{200} * .5 *$ 40 overtime hours = $10).

**order to participate in this settlement and receive your final settlement payment as approved by the Court.**

Under the Settlement, Academy agrees to pay the total sum of (and not to exceed) Nine Hundred Twenty-Five Thousand Dollars ($925,000.00) (the "Total Settlement Amount") into a Qualified Settlement Fund ("QSF") in order to fully and finally resolve settlement of the Claim for the Participating Class Members. The Total Settlement Amount is inclusive of the Settlement Administrator's administration costs; Class Counsel's fees and costs (to be requested for approval at 33% of the Total Settlement Amount for fees, and reimbursement of advanced litigation costs); interest; back wages; liquidated/statutory damages or penalties; and service payments to Named Plaintiffs, if awarded by the Court; arising out of the Claim. The Total Settlement Amount covers the full amount of both the Participating Class Members' W-2 withholdings (and state/local withholdings if applicable) on the wages portion of their Settlement Payments, and any employer share of payroll taxes on the wages portion of the Settlement Payments made to Participating Class Members, to be paid by the Settlement Administrator from the QSF created for this settlement. No amount of the Total Settlement Amount will revert to Defendant.

Pursuant to the settlement approved by the Court, in return for your release of the "Released FLSA Claims" as defined below that you may have had against Defendant, based on preliminary settlement share calculations prior to final calculations after factoring in any exclusions and reallocation of unclaimed funds, your preliminarily approved total gross settlement amount you will receive is:

$xxx.xx.[2]

Your share of this settlement was calculated based on your number of weeks worked in a covered position during the relevant period, at your applicable multiplier which factored in whether you joined the Litigation as an Opt-In Plaintiff or not, whether you worked in one of the states covered by the state law classes or not, and the additional potential damages, penalties and interest under the particular state wage and hour laws for those state law classes over and above available FLSA damages for individuals who worked in those states. No FLSA Collective Member will receive less than $200, and no participating member of the state law classes who had not previously submitted a Consent to join the Litigation will receive less than $100. Your Final Settlement Payment will be payable to you in two checks. One check will be for one-half of your Final Settlement Payment gross amount representing "back wages," from which all applicable payroll taxes were withheld and you will receive an IRS W-2 form for 2018. The second check for the other half of your Final Settlement Payment gross amount represents "liquidated damages," for which no taxes were withheld and you will receive an IRS 1099 form for 2018.

---

[2] This gross amount will not decrease but may increase slightly upon final calculations after reallocation of any funds allocated to a potential member of the state law classes who excludes themselves from the settlement and/or fails to claim their offered FLSA Payment. The final amount, after any increase due to exclusions or reallocation of unclaimed funds, will be your "Final Settlement Payment."

You will receive your Final Settlement Payment checks within the Court-authorized distribution period after the close of the Notice period regarding this settlement, which distribution date shall be no less than 100 days from the date of this notice. You will then have to ninety (90) days from the date on the checks within which to timely cash, deposit, or otherwise negotiate your Settlement Checks. If you do not deposit, cash, or otherwise negotiate one or both of your two Settlement Checks within the required time, the funds will be deposited in your name with the appropriate state agency responsible for collecting unclaimed funds and in accordance with the Settlement Agreement. You should seek your own tax advice from a tax professional (not Plaintiffs' Counsel) regarding any payments under this Settlement Notice, and if you are involved in a bankruptcy proceeding,[3] you should seek your own bankruptcy law advice from a bankruptcy attorney (not Plaintiffs' Counsel) regarding this Settlement Notice.

Whether you are a current or former employee of Defendant who is a participant in this Settlement, Defendant will not take any action against employees who joined the Litigation or participate in the settlement as a result of their decision to do so.

As a participant in this settlement, upon final approval of this settlement[4] you affirm and agree to be bound by the full and final release of Defendant and all "Releasees" of the "Released FLSA Claims" (the "Released Claims") in this lawsuit (as defined below), and you affirm you will not sue for, or otherwise assert, any of the Released Claims against Defendant or any of the Releasees.

"Releasees" means Defendant Academy Mortgage Corporation (UT), and its parents, divisions, subsidiaries, predecessors and successors, and its and their directors, officers, members, fiduciaries, insurers, employees, attorneys and agents.

"Released FLSA Claims" means any and all claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against Academy that were or could have been asserted in the Complaint or Amended Complaint in the Action based exclusively on the Claim for the Claims Period, for alleged unpaid wages, overtime compensation, liquidated or other damages, unpaid costs, penalties (including late payment penalties), interest, attorneys' fees, litigation costs, restitution or other compensation and relief, arising under the FLSA for the time period between the FLSA Start Date and April

---

[3] If you have filed for individual or joint bankruptcy protection within the period beginning three years prior to submitting your Consent in this litigation through the present, you may not be permitted to participate in this settlement under the bankruptcy rules because some or all of your claim might belong to your bankruptcy estate. You will need to check your personal records for your individual circumstance regarding the bankruptcy (for example, the Chapter under which you filed, the timing of the filing and your current indebtedness) and obtain legal advice from your bankruptcy attorney to determine if you are allowed to participate in this settlement by accepting this payment. You must comply with all applicable bankruptcy laws and rules.

[4] Under the Settlement Agreement, Academy has the right, but not the obligation, to terminate the settlement if exclusions are timely submitted by at least 10% of the potential State Settlement Class members (who were not FLSA Settlement Collective Members) for whom the state employment records reflect a "Worked in State" code for California, Arizona and Colorado in the aggregate, within seven (7) days of notification from the Administrator of the exclusions satisfying the condition precedent herein.

28, 2017.

"Claim" means Plaintiffs' allegation that the overtime premiums that Academy paid its employees internally classified and paid as non-exempt for the hours that Defendant compensated on its regularly scheduled pay periods, as contained in its payroll records produced to Plaintiff for the Claim Periods prior to mediation, were paid at less than the full required overtime premium amounts because the overtime premium amounts were calculated and paid without factoring in the Bonuses amounts paid, resulting in non-payment of overtime premiums on the Bonuses amounts paid for Plaintiffs' work in the work weeks in which Plaintiffs worked the recorded hours compensated by the Bonuses within the Claim Periods, limited in scope to only those non-exempt employees who worked overtime hours under applicable law in a work week for which the amounts of one or more of the Bonuses were paid (except double pay, which is merely derivative of overtime hourly rate pay) and received overtime premiums paid for those overtime hours that were calculated and paid without factoring in the amounts that Academy actually paid as the Bonuses at issue within the Claim Periods.

"Claim Periods" means as follows:

      1.    For Performance Bonuses, from three years before you filed or submitted your Consent in the Litigation (your "FLSA Collective Start Date") until the April 25, 2016 pay date.

      2.    For Signing Bonuses having a "clawback" period with a recoupment provision tied to remaining employed for a set number of months, from your FLSA Collective Start Date through April 28, 2017;

      3.    For Double Pay, from your FLSA Collective Start Date through April 28, 2017;

      4.    For Lump Sum Holiday Pay, from your FLSA Collective Start Date through April 28, 2017; and

      5.    For Referral Bonuses, from your FLSA Collective Start Date through April 28, 2017.

Upon the effective date after final approval, Academy releases any claims against you arising out of your assertion of the Released FLSA Claims, and releases any claims against you for recoupment or reimbursement of severance payments or sign-on bonuses paid. Academy further agrees that participation in this settlement shall not be deemed to violate any prior release or other covenant not to sue agreement between you and Academy.

If you have any questions about anything other than a request for specific legal advice, contact the Settlement Administrator:

[SETTLEMENT ADMINISTRATOR CONTACT INFO]

The Settlement Administrator has been retained to exclusively handle all questions regarding the settlement, calculations determining your payment, address updates, etc. (i.e., everything other than questions specifically requiring legal advice). If you need specific legal advice regarding this case (except tax or bankruptcy law advice, which counsel cannot provide),

5

contact Plaintiffs' Counsel:

Bethany Hilbert
Head Law Firm, LLC
4422 N Ravenswood Ave
Chicago, IL 60640
Tel: (312) 690-7765
Fax: (404) 796-7338
Email: bhilbert@headlawfirm.com

**THIS NOTICE HAS BEEN AUTHORIZED BY THE HONORABLE CHARLES A. PANNELL, JR., DISTRICT JUDGE. THE COURT HAS EXPRESSED NO OPINION REGARDING THE MERITS OF THE PARTIES' CLAIMS OR DEFENSES. PLEASE DO NOT CONTACT THE COURT REGARDING THIS NOTICE.**

**Tab B**

**(Notice of Settlement: FLSA Settlement Collective
Member And State Law Classes Member)**

## NOTICE OF SETTLEMENT

*George, et al v. Academy Mortgage Corporation (UT),* No. 1:16-cv-00471-CAP, in the
U.S. District Court for the Northern District of Georgia (the "Litigation")

*A court authorized this notice.  This is not a solicitation from a lawyer.*

To: [Name of FLSA Settlement Collective Member and State Law Classes Member]

You are receiving this Notice because you submitted a Consent to opt-in to the Litigation, in response to a notice you received because you were paid as a non-exempt employee by Defendant Academy Mortgage Corporation (UT) ("Academy" or "Defendant") and your overtime pay received was calculated based on your hourly rate of pay, but you also received bonuses or other similar production/incentive compensation (each a "bonus" and collectively "bonuses") for work performed in an overtime week (i.e., a week in which you worked more than forty (40) hours in a workweek) that was not included in the calculation of your rate of pay for overtime premiums when Defendant calculated and paid overtime premiums for the overtime hours recorded as worked during the time period in which the bonus was earned, in one or more pay periods from the date three years preceding the date you submitted your Consent (your "FLSA Collective Start Date") through the end of the relevant period defined below (the "Claim").[1]  Plaintiffs in this Litigation asserted the Claim alleging that this resulted in underpayment of overtime pay individually and on your behalf in an alleged collective action under the Fair Labor Standards Act ("FLSA"), and on behalf of you and the other similarly situated individuals who worked in the states of Arizona, California, Colorado, Idaho, Illinois, Maryland, Ohio, and Washington as an alleged class action under the applicable wage and hour laws of those states ("state law classes").   Defendant disputes the allegations and admits no liability.   Nonetheless, Defendant in this Litigation has agreed to settle the Claim for all individuals who filed opt-in Consents to join this Litigation by complying with the procedures set forth in this Notice, and for the members of the state law class claims who did not file opt-in Consents to join this Litigation.  Under the Court-authorized Notice process, the Notice you received and the Consent you submitted to join the Litigation authorized the representative plaintiff to make settlement decisions on behalf of you and the collective group. The parties reached a settlement, and the Court preliminarily approved the settlement on ▬▬▬▬▬▬▬. **You are, therefore, automatically a participant in this settlement, and you do not need to**

---

[1] Because you were already paid overtime premiums in full for hours recorded as worked over 40 in a workweek at time-and-a-half based on your hourly rate of pay, and because the bonus amounts at issue in the Litigation were paid for all of your hours recorded as worked in the applicable bonus period (both regular and overtime hours), the only additional overtime pay at issue for your FLSA claims in the Litigation was the additional one-half overtime premium allegedly owed for overtime hours based on bonuses received. As a simple example (based on purely hypothetical figures), if you had received a $100 monthly per-file production bonus for a month in which you worked four 50-hour weeks (i.e., a $100 bonus paid for working 200 hours in the month (160 regular non-overtime hours plus 40 overtime hours)), the total amount of additional one-half overtime premiums allegedly owed for that bonus amount under the FLSA claim being settled in this Litigation was $10 for that month ($ $\frac{100}{200} * .5 *$ 40 overtime hours = $10).

**take any action in order to participate in this settlement and receive your final settlement payment as approved by the Court.**

Under the Settlement, Academy agrees to pay the total sum of (and not to exceed) Nine Hundred Twenty-Five Thousand Dollars ($925,000.00) (the "Total Settlement Amount") into a Qualified Settlement Fund ("QSF") in order to fully and finally resolve settlement of the Claim for the Participating Class Members. The Total Settlement Amount is inclusive of the Settlement Administrator's administration costs; Class Counsel's fees and costs (to be requested for approval at 33% of the Total Settlement Amount for fees, and reimbursement of advanced litigation costs); interest; back wages; liquidated/statutory damages or penalties; and service payments to Named Plaintiffs, if awarded by the Court; arising out of the Claim. The Total Settlement Amount covers the full amount of both the Participating Class Members' W-2 withholdings (and state/local withholdings if applicable) on the wages portion of their Settlement Payments, and any employer share of payroll taxes on the wages portion of the Settlement Payments made to Participating Class Members, to be paid by the Settlement Administrator from the QSF created for this settlement. No amount of the Total Settlement Amount will revert to Defendant.

Pursuant to the settlement approved by the Court, in return for your release of the "Released FLSA Claims" and the "Released State Law Claims" as defined below that you may have had against Defendant, based on preliminary settlement share calculations prior to final calculations after factoring in any exclusions and reallocation of unclaimed funds, your preliminarily approved total gross settlement amount you will receive is:

<u>$xxx.xx</u>.[2]

Your share of this settlement was calculated based on your number of weeks worked in a covered position during the relevant period, at your applicable multiplier which factored in whether you joined the Litigation as an Opt-In Plaintiff or not, whether you worked in one of the states covered by the state law classes or not, and the additional potential damages, penalties and interest under the particular state wage and hour laws for those state law classes over and above available FLSA damages for individuals who worked in those states. No FLSA Collective Member will receive less than $200, and no participating member of the state law classes who had not previously submitted a Consent to join the Litigation will receive less than $100. Your Final Settlement Payment will be payable to you in two checks. One check will be for one-third of your Final Settlement Payment gross amount representing "back wages,"[3] from which all applicable payroll taxes were withheld and you will receive an IRS W-2 form for 2018. The second check for the other two-thirds of your Final Settlement Payment gross amount represents "liquidated damages," for which no taxes were withheld and you will receive an IRS 1099 form for 2018.

---

[2] This gross amount will not decrease but may increase slightly upon final calculations after reallocation of any funds allocated to a potential member of the state law classes who excludes themselves from the settlement and/or fails to claim their offered FLSA Payment. The final amount, after any increase due to exclusions or reallocation of unclaimed funds, will be your "Final Settlement Payment."

You will receive your Final Settlement Payment checks within the Court-authorized distribution period after the close of the Notice period regarding this settlement, which distribution date shall be no less than 100 days from the date of this notice. You will then have ninety (90) days from the date on the checks within which to timely cash, deposit, or otherwise negotiate your Settlement Checks.  If you do not deposit, cash, or otherwise negotiate one or both of your two Settlement Checks within the required time, the funds will be deposited in your name with the appropriate state agency responsible for collecting unclaimed funds and in accordance with the Settlement Agreement. You should seek your own tax advice from a tax professional (not Plaintiffs' Counsel) regarding any payments under this Settlement Notice, and if you are involved in a bankruptcy proceeding,[4] you should seek your own bankruptcy law advice from a bankruptcy attorney (not Plaintiffs' Counsel) regarding this Settlement Notice.

Whether you are a current or former employee of Defendant who is a participant in this Settlement, Defendant will not take any action against employees who joined the Litigation or participate in the settlement as a result of their decision to do so.

As a participant in this settlement, upon final approval of this settlement[5] you affirm and agree to be bound by the full and final release of Defendant and all "Releasees" of the "Released FLSA Claims" and the "Released State Law Claims" (the "Released Claims") in this lawsuit (as defined below), and you affirm you will not sue for, or otherwise assert, any of the Released Claims against Defendant or any of the Releasees.

"Releasees" means Defendant Academy Mortgage Corporation (UT), and its parents, divisions, subsidiaries, predecessors and successors, and its and their directors, officers, members, fiduciaries, insurers, employees, attorneys and agents.

"Released FLSA Claims" means any and all claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against Academy that were or could have been asserted in the Complaint or Amended Complaint in the Action based exclusively on the Claim for the Claims Period, for alleged unpaid wages, overtime compensation, liquidated or other damages, unpaid costs, penalties (including late payment penalties), interest, attorneys' fees, litigation costs, restitution or other compensation and

---

[4] If you have filed for individual or joint bankruptcy protection within the period beginning three years prior to submitting your Consent in this litigation through the present, you may not be permitted to participate in this settlement under the bankruptcy rules because some or all of your claim might belong to your bankruptcy estate. You will need to check your personal records for your individual circumstance regarding the bankruptcy (for example, the Chapter under which you filed, the timing of the filing and your current indebtedness) and obtain legal advice from your bankruptcy attorney to determine if you are allowed to participate in this settlement by accepting this payment. You must comply with all applicable bankruptcy laws and rules.

[5] Under the Settlement Agreement, Academy has the right, but not the obligation, to terminate the settlement if exclusions are timely submitted by at least 10% of the potential State Settlement Class members (who were not FLSA Settlement Collective Members) for whom the state employment records reflect a "Worked in State" code for California, Arizona and Colorado in the aggregate, within seven (7) days of notification from the Administrator of the exclusions satisfying the condition precedent herein.

relief, arising under the FLSA for the time period between the FLSA Start Date and April 28, 2017.

"Released State Law Claims" means any and all claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against Academy that were or could have been asserted in the Complaint or Amended Complaint based exclusively on the Claim for the Claims Period, for alleged unpaid wages, overtime compensation, liquidated or other damages, unpaid costs, penalties (including late payment penalties), interest, attorneys' fees, litigation costs, restitution or other compensation and relief arising under the statutes, regulations, or common law of Arizona, California, Colorado, Idaho, Illinois, Maryland, Ohio, and Washington, for the time period between the State Class Start Date and [_____], the date the Court preliminarily approved settlement.

"Claim" means Plaintiffs' allegation that the overtime premiums that Academy paid its employees internally classified and paid as non-exempt for the hours that Defendant compensated on its regularly scheduled pay periods, as contained in its payroll records produced to Plaintiff for the Claim Periods prior to mediation, were paid at less than the full required overtime premium amounts because the overtime premium amounts were calculated and paid without factoring in the Bonuses amounts paid, resulting in non-payment of overtime premiums on the Bonuses amounts paid for Plaintiffs' work in the work weeks in which Plaintiffs worked the hours compensated by the Bonuses within the Claim Periods, limited in scope to only those non-exempt employees who worked overtime hours under applicable law in a work week for which the amounts of one or more of the Bonuses were paid (except double pay, which is merely derivative of overtime hourly rate pay) and received overtime premiums paid for those overtime hours that were calculated and paid without factoring in the amounts that Academy actually paid as the Bonuses at issue within the Claim Periods.

"Claim Periods" means as follows:

  1.   For Performance Bonuses, from three years before you filed or submitted your Consent in the Litigation (your "FLSA Collective Start Date") and State Class Start Date until the April 25, 2016 pay date.
  2.   For Signing Bonuses having a "clawback" period with a recoupment provision tied to remaining employed for a set number of months, from the FLSA Collective Start Date and State Class Start Date through April 28, 2017;
  3.   For Double Pay, from the FLSA Collective Start Date and State Class Start Date through April 28, 2017;
  4.   For Lump Sum Holiday Pay, from the FLSA Collective Start Date and State Class Start Date through April 28, 2017; and
  5.   For Referral Bonuses, from the FLSA Collective Start Date and State Class Start Date through April 28, 2017.

Upon the effective date after final approval, Academy releases any claims against you arising out of your assertion of the Released FLSA Claims or Released State Law Claims, and

releases any claims against you for recoupment or reimbursement of severance payments or sign-on bonuses paid. Academy further agrees that participation in this settlement shall not be deemed to violate any prior release or other covenant not to sue agreement between you and Academy.

If you have any questions about anything other than a request for specific legal advice, contact the Settlement Administrator:

[SETTLEMENT ADMINISTRATOR CONTACT INFO]

The Settlement Administrator has been retained to exclusively handle all questions regarding the settlement, calculations determining your payment, address updates, etc. (i.e., everything other than questions specifically requiring legal advice). If you need specific legal advice regarding this case (except tax or bankruptcy law advice, which counsel cannot provide), contact Plaintiffs' Counsel:

Bethany Hilbert
Head Law Firm, LLC
4422 N Ravenswood Ave
Chicago, IL 60640
Tel: (312) 690-7765
Fax: (404) 796-7338
Email: bhilbert@headlawfirm.com

**THIS NOTICE HAS BEEN AUTHORIZED BY THE HONORABLE CHARLES A. PANNELL, JR., DISTRICT JUDGE. THE COURT HAS EXPRESSED NO OPINION REGARDING THE MERITS OF THE PARTIES' CLAIMS OR DEFENSES. PLEASE DO NOT CONTACT THE COURT REGARDING THIS NOTICE.**

**Tab C**

**(Notice of Settlement: non-FLSA Collective Member,
State Law Classes Member)**

**NOTICE OF SETTLEMENT AND OPPORTUNITY TO PARTICIPATE**

George, et al v. Academy Mortgage Corporation (UT), No. 1:16-cv-00471-CAP, in the
U.S. District Court for the Northern District of Georgia ((the "Litigation")

*A court authorized this notice.  This is not a solicitation from a lawyer.*

To: [Name of non-FLSA Collective member, State Law Class Member]

You are receiving this Notice because you were paid as a non-exempt employee by Defendant Academy Mortgage Corporation (UT) ("Academy" or "Defendant") for working in the states of Arizona, California, Colorado, Idaho, Illinois, Maryland, Ohio, or Washington, and your overtime pay received was calculated based on your hourly rate of pay, but you also received bonuses or other similar production/incentive compensation (each a "bonus" and collectively "bonuses") for work performed in an overtime week (i.e., a week in which you worked more than forty (40) hours in a workweek or any other overtime hours defined by state law) that was not included in the calculation of your rate of pay for overtime premiums when Defendant calculated and paid overtime premiums for the overtime hours recorded as worked during the time period in which the bonus was earned, in one or more pay periods from the relevant state law class start date through the end of the relevant period defined below (the "Claim"),[1] but you did not timely submit a Consent to opt-in to the Litigation in response to a notice distributed during the notice period of the Litigation.  Plaintiffs in this Litigation asserted the Claim alleging that this resulted in underpayment of overtime pay individually and on behalf of all those who submitted Consents in an alleged collective action under the Fair Labor Standards Act ("FLSA"), and on behalf of you and the other similarly situated individuals who worked in the states of Arizona, California, Colorado, Idaho, Illinois, Maryland, Ohio, and Washington as an alleged class action under the applicable wage and hour laws of those states ("state law classes").  Defendant disputes the allegations and admits no liability.  Nonetheless, Defendant in this Litigation has agreed to settle the Claim for all individuals who filed opt-in Consents to join this Litigation and for the members of the state law classes who did not file opt-in Consents to join this Litigation. The parties reached a settlement that includes settlement of the Claim for the state law classes, and the Court preliminarily approved the settlement on _____. **You are, therefore, automatically a participant in this settlement unless you explicitly exclude yourself from this settlement; however, you**

---

[1] Because you were already paid overtime premiums in full for hours recorded as worked over 40 in a workweek at time-and-a-half based on your hourly rate of pay, and because the bonus amounts at issue in the Litigation were paid for all of your hours recorded as worked in the applicable bonus period (both regular and overtime hours), the only additional overtime pay at issue for your potential FLSA claims in the Litigation was the additional one-half overtime premium allegedly owed for overtime hours based on bonuses received. As a simple example (based on purely hypothetical figures), if you had received a $100 monthly per-file production bonus for a month in which you worked four 50-hour weeks (i.e., a $100 bonus paid for working 200 hours in the month (160 regular non-overtime hours plus 40 overtime hours)), the total amount of additional one-half overtime premiums allegedly owed for that bonus amount under the FLSA claim being settled in this Litigation was $10 for that month ($ $\frac{100}{200}$ * .5 * 40 overtime hours = $10).

**will not receive your additional FLSA Payment unless you timely sign and return a Claim Form, as described below.**

Under the Settlement, Academy agrees to pay the total sum of (and not to exceed) Nine Hundred Twenty-Five Thousand Dollars ($925,000.00) (the "Total Settlement Amount") into a Qualified Settlement Fund ("QSF") in order to fully and finally resolve settlement of the Claim for the Participating Class Members. The Total Settlement Amount is inclusive of the Settlement Administrator's administration costs; Class Counsel's fees and costs (to be requested for approval at 33% of the Total Settlement Amount for fees, and reimbursement of advanced litigation costs); interest; back wages; liquidated/statutory damages or penalties; and service payments to Named Plaintiffs, if awarded by the Court; arising out of the Claim. The Total Settlement Amount covers the full amount of both the Participating Class Members' W-2 withholdings (and state/local withholdings if applicable) on the wages portion of their Settlement Payments, and any employer share of payroll taxes on the wages portion of the Settlement Payments made to Participating Class Members, to be paid by the Settlement Administrator from the QSF created for this settlement. No amount of the Total Settlement Amount will revert to Defendant.

Pursuant to the settlement approved by the Court, if you do not timely submit a Claim Form to claim your additional FLSA Payment, then in return for your release of the "Released State Law Claims" as defined below that you may have had against Defendant, your preliminarily approved total gross settlement amount you will receive if you do not file a Claim Form and do not exclude yourself from the settlement will be:

State Law Only Payment: $xxx.xx.

If, however, you timely submit a Claim Form to claim your additional FLSA Payment and thereby release "Released FLSA Claims" as defined below, then based on preliminary settlement share calculations prior to final calculations after factoring in any exclusions and reallocation of unclaimed funds, your preliminarily approved total gross Additional FLSA Payment amount you will receive in addition to your State Law Only Payment above will be:

Additional FLSA Payment: $xxx.xx.[2]

Your share of this settlement was calculated based on your number of weeks worked in a covered position during the relevant period, at your applicable multiplier which factored in whether you joined the Litigation as an Opt-In Plaintiff or not, whether you worked in one of the states covered by the state law classes or not, and the additional potential damages, penalties and interest under the particular state wage and hour laws for those state law classes over and above available FLSA damages for individuals who worked in those states. No FLSA Collective Member will receive less than $200, and no participating

---

[2] This gross amount will not decrease but may increase slightly upon final calculations after reallocation of any funds allocated to a potential member of the state law classes who excludes themselves from the settlement and/or fails to claim their offered FLSA Payment. The final amount, after any increase due to exclusions or reallocation of unclaimed funds, will be your "Final Settlement Payment."

member of the state law classes who had not previously submitted a Consent to join the Litigation will receive less than $100. Your Final Settlement Payment will be payable to you in two checks. One check will be for one-third of your Final Settlement Payment gross amount representing "back wages," from which all applicable payroll taxes were withheld and you will receive an IRS W-2 form for 2018. The second check for the other two-thirds of your Final Settlement Payment gross amount represents "liquidated damages," for which no taxes were withheld and you will receive an IRS 1099 form for 2018.

If you do not exclude yourself from the settlement, you will receive your Final Settlement Payment checks within the Court-authorized distribution period after the close of the Notice period regarding this settlement, which distribution date shall be no less than 100 days from the date of this notice. You will then have ninety (90) days from the date on the checks within which to timely cash, deposit, or otherwise negotiate your Settlement Checks. If you do not deposit, cash, or otherwise negotiate one or both of your two Settlement Checks the funds will be deposited with the appropriate state agency responsible for collecting unclaimed funds and in accordance with the Settlement Agreement. You should seek your own tax advice from a tax professional (not Plaintiffs' Counsel) regarding any payments under this Settlement Notice, and if you are involved in a bankruptcy proceeding,[3] you should seek your own bankruptcy law advice from a bankruptcy attorney (not Plaintiffs' Counsel) regarding this Settlement Notice.

Whether you are a current or former employee of Defendant, if you participate in this Settlement, Defendant will not take any action against employees who joined the Litigation or participate in the settlement as a result of their decision to do so.

You have four separate options with regards to this Settlement.  You can: (1) timely file a Claim Form under the procedures explained below, and thereby claim your additional FLSA Payment for also releasing FLSA Released Claims; (2) do nothing, and therefore receive a lesser amount of settlement payment for releasing only State Law Released Claims; (3) request to be excluded from the settlement entirely by excluding yourself from the State Law Class, and therefore not receive any settlement payment; or (4) object to the settlement and/or request by Class Counsel for an award from the settlement fund of attorney's fees, service award to the named plaintiffs, and reimbursement of expenses, and receive a settlement payment.

Details about each option and how it would affect your rights are explained below:

1.   **Claim Your Additional FLSA Payment.** If you sign and return a Claim Form to the Settlement Administrator by [date 60 days from first issuance of Notice], you will be

---

[3] If you have filed for individual or joint bankruptcy protection within the period beginning three years prior to submitting your Consent in this litigation through the present, you may not be permitted to participate in this settlement under the bankruptcy rules because some or all of your claim might belong to your bankruptcy estate. You will need to check your personal records for your individual circumstance regarding the bankruptcy (for example, the Chapter under which you filed, the timing of the filing and your current indebtedness) and obtain legal advice from your bankruptcy attorney to determine if you are allowed to participate in this settlement by accepting this payment. You must comply with all applicable bankruptcy laws and rules.

paid your Additional FLSA Payment in addition to your State Law Only Payment, you will have consented to join the FLSA Collective Action, and, by that act, you affirm and agree to be bound by the full and final release of Defendant and all "Releasees" of the "Released FLSA Claims" and "Released State Law Claims" in this lawsuit as defined below (and Academy will have released certain claims against you as defined below), and you affirm you will not sue for, or otherwise assert, any of those released claims against Defendant or any of the Releasees.

2.   **Do Nothing.** If you do nothing in response to this Notice, then upon final approval of the settlement by the Court,[4] you will receive your State Law Only Payment from this settlement, you will be deemed to have waived and released only the Released State Law Claims defined below (and Academy will have released certain claims against you as defined below), and you affirm you will not sue for, or otherwise assert, any of those released claims against Defendant or any of the Releasees. .

3.   **Request Exclusion From Settlement.** To exclude yourself entirely from the settlement, you must submit a "Request for Exclusion" from the state law classes, in writing to the Settlement Administrator at its address listed below, with a postmark date of no later than [45 days after Notice distribution date].  This Request for Exclusion must include your name and address, and must state: (1) that you are requesting to be excluded from the Parties' settlement in the case *George, et al v. Academy Mortgage Corporation (UT)*, No. 1:16-cv-00471-CAP, in the U.S. District Court for the Northern District of Georgia; and (2) that you understand that by excluding yourself from the settlement, you will receive no funds in conjunction with the settlement of this case.  If you exclude yourself, you will not participate in these proceedings, nor will you receive any recovery from the settlement.  You will also retain the right to assert any claims you may have against Defendant relating to the Claim for which the deadline to file such claims has not already expired; however, Academy will not have released any claims against you by this settlement, including any claims it may have against you for recoupment or reimbursement of severance payments or sign-on bonuses paid.

4.   **File Objection.** You can only object to the terms of the Settlement and/or to the attorneys' request for fees and costs or to the Plaintiffs' requests for a service award if you do not submit a timely and complete "Request for Exclusion."  You may both object to the Settlement or to the award requests and participate in the Settlement. In order to object to the Settlement and/or request for fees and expenses, you must file a copy of your written objection bearing the style of the case (*George, et al v. Academy Mortgage Corporation (UT)*, No. 1:16-cv-00471-CAP (N.D. Ga.)) with the Clerk's Office, U.S. District Court for the Northern District of Georgia, Richard B. Russell Federal Building, 2211 United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, GA 30303-3309, and mail a copy of your written objection to the Settlement

---

[4] Under the Settlement Agreement, Academy has the right, but not the obligation, to terminate the settlement if exclusions are timely submitted by at least 10% of the potential State Settlement Class members (who were not FLSA Settlement Collective Members) for whom the state employment records reflect a "Worked in State" code for California, Arizona and Colorado in the aggregate, within seven (7) days of notification from the Administrator of the exclusions satisfying the condition precedent herein.

Administrator at its address listed below no later than [45 days after Notice distribution date].  Any written objection must be signed and state each specific reason in support of your objection and any legal support for each objection. *PLEASE DO NOT TELEPHONE THE COURT.*

If you submit a timely objection, you may also appear, at your own expense, at the Final Approval Hearing.  However, to appear at the Final Approval Hearing in Court, you must first submit a "Notice of Intention to Appear at the Final Approval Hearing" – which is currently set for _____ at _____, in Courtroom 2307, U.S. District Court for the Northern District of Georgia, Richard B. Russell Federal Building, 2211 United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, GA 30303-3309.  You can represent yourself, or you may appear through your own attorney if you or your attorney also file a "Notice of Appearance" bearing the style of the case with the Clerk's Office, U.S. District Court for the Northern District of Georgia, Richard B. Russell Federal Building, 2211 United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, GA 30303-3309, and deliver copies to each of the attorneys listed herein, no later than [21 days prior to final approval hearing].

"Releasees" means Defendant Academy Mortgage Corporation (UT), and its parents, divisions, subsidiaries, predecessors and successors, and its and their directors, officers, members, fiduciaries, insurers, employees, attorneys and agents.

"Released State Law Claims" means any and all claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against Academy that were or could have been asserted in the Complaint or Amended Complaint based exclusively on the Claim for the Claims Period, for alleged unpaid wages, overtime compensation, liquidated or other damages, unpaid costs, penalties (including late payment penalties), interest, attorneys' fees, litigation costs, restitution or other compensation and relief arising under the statutes, regulations, or common law of Arizona, California, Colorado, Idaho, Illinois, Maryland, Ohio, and Washington, for the time period between the State Class Start Date and [_____], the date the Court preliminarily approved settlement.

"Released FLSA Claims" means any and all claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against Academy that were or could have been asserted in the Complaint or Amended Complaint in the Action based exclusively on the Claim for the Claims Period, for alleged unpaid wages, overtime compensation, liquidated or other damages, unpaid costs, penalties (including late payment penalties), interest, attorneys' fees, litigation costs, restitution or other compensation and relief, arising under the FLSA for the time period of three years preceding the preliminary approval date and April 28, 2017.

"Claim" means Plaintiffs' allegation that the overtime premiums that Academy paid its employees internally classified and paid as non-exempt for the hours that Defendant compensated on its regularly scheduled pay periods, as contained in its payroll records produced to Plaintiff for the Claim Periods prior to mediation, were paid at less than the full required overtime premium amounts because the overtime premium amounts were

calculated and paid without factoring in the Bonuses amounts paid, resulting in non-payment of overtime premiums on the Bonuses amounts paid for Plaintiffs' work in the work weeks in which Plaintiffs worked the hours compensated by the Bonuses within the Claim Periods, limited in scope to only those non-exempt employees who worked overtime hours under applicable law in a work week for which the amounts of one or more of the Bonuses were paid (except double pay, which is merely derivative of overtime hourly rate pay) and received overtime premiums paid for those overtime hours that were calculated and paid without factoring in the amounts that Academy actually paid as the Bonuses at issue within the Claim Periods.

"Claim Periods" means as follows:

    1.    For Performance Bonuses, from the maximum look-back period under the applicable statute of limitations for your state (the "State Class Start Date") until the April 25, 2016 pay date.
    2.    For Signing Bonuses having a "clawback" period with a recoupment provision tied to remaining employed for a set number of months, from the State Class Start Date through April 28, 2017;
    3.    For Double Pay, from the State Class Start Date through April 28, 2017;
    4.    For Lump Sum Holiday Pay, from the State Class Start Date through April 28, 2017; and
    5.    For Referral Bonuses, from the State Class Start Date through April 28, 2017.

Upon the effective date after final approval, Academy releases any claims against you arising out of your assertion of the Released State Law Claims, and releases any claims against you for recoupment or reimbursement of severance payments or sign-on bonuses paid. Academy further agrees that participation in this settlement shall not be deemed to violate any prior release or other covenant not to sue agreement between you and Academy.

If you have any questions about anything other than a request for specific legal advice, contact the Settlement Administrator:

[SETTLEMENT ADMINISTRATOR CONTACT INFO]

The Settlement Administrator has been retained to exclusively handle all questions regarding the settlement, calculations determining your payment, address updates, etc. (i.e., everything other than questions specifically requiring legal advice). If you need specific legal advice regarding this case (except tax or bankruptcy law advice, which counsel cannot provide), contact Plaintiffs' Counsel:

Bethany Hilbert
Head Law Firm, LLC
4422 N Ravenswood Ave
Chicago, IL 60640
Tel: (312) 690-7765

7

Fax: (404) 796-7338
Email: bhilbert@headlawfirm.com

**THIS NOTICE HAS BEEN AUTHORIZED BY THE HONORABLE CHARLES A. PANNELL, JR., DISTRICT JUDGE. THE COURT HAS EXPRESSED NO OPINION REGARDING THE MERITS OF THE PARTIES' CLAIMS OR DEFENSES. PLEASE DO NOT CONTACT THE COURT REGARDING THIS NOTICE.**

**Tab D**

**(Reminder Notice: Uncashed Checks)**

**Settlement Reminder Notice:** *George v. Academy Mortgage Corporation (UT)*

  Recently, you should have received Settlement Checks for your participation in the settlement of a class and collective action for alleged unpaid overtime wages in the case of *George v. Academy Mortgage Corporation (UT)*, No. 1:16-cv-00471-CAP (N.D. Ga.). If you wish to recover your settlement payment, you must negotiate the Settlement Checks previously sent to you within the time limited period of 90 days from the check date.

  If you did not receive or no longer have the Settlement Checks, or have any questions except for legal advice, please immediately contact the Settlement Administrator, _____, at [FULL CONTACT INFO]. If you need legal advice (except tax or bankruptcy law advice), please contact Plaintiff's counsel Head Law Firm, LLC at 312-690-7765 or bhilbert@headlawfirm.com.

  If you do not cash/deposit the Settlement Check by **[INSERT DATE]**, it will be void, the Settlement Administrator will issue a stop payment order, and the funds will be submitted in your name to your applicable state agency under applicable state unclaimed property laws.