# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| DEBORAH GEORGE, SUSAN SCHOUTEN, LISA ROGERS STOCK, DENNIS LONERGAN, KAREN FITZPATRICK, AMICIE CRAYTON, PAMELA OGDEN, COLLEEN KORB, And PAMELA JOHNSON, each individually, and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) | |
| | ) | Civil Action No. |
| | ) | 1:16-cv-00471-CAP |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| ACADEMY MORTGAGE CORPORATION (UT), | ) ) ) | |
| Defendant. | ) ) | |

## ORDER OF FINAL APPROVAL OF
## SETTLEMENT, AUTHORIZING SERVICE AWARDS, AND
## GRANTING APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

On March 8, 2019, Plaintiffs and Defendant ("the Parties") filed their Joint Motion for Final Approval of Class and FLSA Collective Action Settlement, accompanied by Plaintiffs' Unopposed Motion for Approval of Attorney's Fees, Costs, and Service Payments from Settlement, seeking final approval of the parties' Settlement Agreement and Limited Release ("Agreement"). See Dkt. No. 28-1. In support, Plaintiffs filed declarations from Plaintiffs' counsel ("Class Counsel"), as

well as from the Settlement Administrator, RG/2 Claims Administration ("RG/2" or "Settlement Administrator").

This matter came before the Court on March 20, 2019 for a Final Approval Hearing pursuant to the Court's Preliminary Approval Order dated December 10, 2018, as rescheduled by this Court's Order dated December 18, 2018. See Dkt. Nos. 32, 33. The Court reviewed all of the filings related to the Settlement and heard argument on the motions for final approval.

After careful consideration of the presentations of the Parties, the Court concludes that this Settlement provides a fair, reasonable, and adequate recovery for Settlement Class Members ("Class Members"), the net amount of which Class Counsel believes approximately compensates them for more than 100% of their allegedly unpaid overtime premium amounts for their maximum possible recovery periods, and a significant portion of maximum possible additional liquidated damages, interest, and, as applicable, waiting time penalties. The Settlement constitutes an excellent result for the Settlement Class under the circumstances and challenges presented by the Action. The Court specifically finds that the Settlement is fair, reasonable, and adequate, and a satisfactory compromise of the Settlement Class Members' claims. The Settlement fully complies with Fed. R. Civ. P. 23(e) and, thus, the Court grants Final Approval to the Settlement, certifies the Settlement Class, and awards the fees and costs requested by Class Counsel as well as the requested Service Awards for the Class Representatives.

## BACKGROUND

The present evidentiary record is more than adequate for the Court to consider the fairness, reasonableness, and adequacy of the Settlement. A fundamental question is whether the district judge has sufficient facts before him to evaluate and intelligently and knowledgeably approve or disapprove the settlement. *Lunsford v. Woodforest Nat'l Bank*, No. 1:12-cv-103-CAP, 2014 U.S. Dist. LEXIS 200716, at *3-4 (N.D. Ga. May 19, 2014) (citing *In re General Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1084 n.6 (6th Cir. 1984) (citing *Detroit v. Grinnell*, 495 F.2d 448, 463-68 (2d Cir. 1974))). In this case, the Court clearly has such facts before it in considering the Motion, including the evidence and opinions of Class Counsel and a leading class action settlement administration company, RG/2 Claims Administration, that administered both the original FLSA opt-in published notice program and the Settlement notice program.

## I.   Factual and Procedural Background

Named Plaintiff George's Complaint, filed February 12, 2016, alleged that Academy Mortgage Corporation (UT), ("Academy" or "Defendant") failed to include certain bonuses, commissions, and/or incentive pay (hereinafter "bonuses") in its non-exempt hourly employees' regular rates when calculating their overtime pay, as a company-wide payroll practice, thereby paying them overtime based only on their hourly pay rates but not paying any overtime amounts based on the additional bonus compensation received for overtime hours worked. See Dkt. No. 1.

On May 27, 2016, Defendant filed its Answer and moved to transfer venue to Utah district court. See Dkt. No. 5. Plaintiffs opposed that motion, and this Court denied transfer of venue by Order dated July 12, 2016. See Dkt. No. 18.

The parties filed their Joint Preliminary Report and Discovery Plan on July 5, 2016, presenting disputed positions on issues such as bifurcated discovery and the propriety of Defendant taking pre-certification discovery of Plaintiffs. See Dkt. No. 17.

By Order entered July 13, 2016, the Court set a schedule for Plaintiffs to move for conditional certification of a FLSA collective action and issuance of notice, denied bifurcated discovery, and ordered that discovery would commence 30 days after the date the Court addresses the conditional certification motion. See Dkt. No. 19.

On August 3, 2016, the parties filed a Joint Proposed Case Management Statement and Stipulation for Stay and Conditional Certification, in which the parties stipulated to conditional certification of a FLSA collective action and a stay in order to allow the parties to engage in mediation. See Dkt. No. 20.

On August 25, 2016, the Court entered an Order conditionally certifying this case to proceed as a collective action, ordering issuance of Notice, and

administratively closing the case during the notice and mediation period. <u>See</u> Dkt. No. 22.

The Notice Administrator, RG/2, distributed Notices pursuant to the required notice and opt-in process, and by the conclusion of that process approximately 260 individuals had submitted Consents to join the lawsuit.

Beginning in late 2016, the parties began preliminary settlement discussions. As a result of negotiations in advance of the mediation, the parties agreed to negotiate at mediation a potential hybrid class/collective action settlement. Prior to the mediation, the parties entered into a tolling agreement as to certain state law class action claims in lieu of Plaintiffs filing (and Defendant having to answer) an amended pleading to add those state law claims before mediation, and requiring extensive pre-mediation exchange of information, payroll records, and pertinent documents. During informal pre-mediation discovery production, Defendant provided to Class Counsel full payroll records, bonus-related and other policy and employment documents, identification of potential state law class members, and other information and records necessary to fully assess the regular rate violation claims at issue. Class Counsel's review of the discovery enabled Plaintiffs to gain an understanding of the evidence related to central questions in the case, and the strengths and weaknesses of the case. <u>See</u> Head Decl. ¶ 13. Furthermore, Class Counsel's review of the documents produced by Defendant also prepared Plaintiffs to engage in well-informed settlement negotiations. *Id.* at ¶ 32.

The parties then conducted an in-person mediation on April 28, 2017, with nationally renowned wage and hour class/collective action mediator Steven G. Pearl, Esq., in Costa Mesa, California. The Parties signed a term sheet at the conclusion of that full-day mediation, memorializing their agreement in principle to a hybrid FLSA collective action and eight state class action settlement. After extensive additional negotiations, the Parties ultimately executed a final signed Agreement in late October, 2018.

On November 29, 2018, the Parties filed their joint motion to reopen the case, accompanied by Plaintiffs' First Amended Complaint asserting eight state law class claims. See Dkt. No. 26, 26-2. The Court granted that motion to reopen the case and permit the filing of the First Amended Complaint by Order dated December 3, 2018. See Dkt. No. 30.

On November 29, 2018, the Parties also filed their joint motion for preliminary settlement approval. See Dkt. No. 28. The Court granted the parties' motion for preliminary settlement approval and certified the Rule 23 settlement classes by Order entered December 20, 2018. See Dkt. No. 32. The Court set a rescheduled final approval hearing for March 20, 2019. See Dkt. No. 33.

The approved Settlement Administrator then issued Court-approved settlement Notice to the eligible class and collective settlement members, which included details on how to object, opt-out, or claim an additional offered FLSA

payment, in addition to notifying Class Members of the Final Approval Hearing set for March 20, 2019. The settlement Notice also informed all Class Members that Plaintiffs would request approval of service payments from the Court, the specific amounts of which were specified in the Settlement Agreement[1] that has been posted on the Settlement Administrator's notice website listed in the Notice since December 21, 2018. The Notice also informed all Class Members that Plaintiffs would request approval of attorney's fees in the amount of 33% of the $925,000 Settlement Fund, in addition to advanced litigation costs as awarded by the Court, both of which terms were specified in the Settlement Agreement posted on the Notice website.

Pursuant to the Court's Order, the period for filing timely objections ended on February 9, 2019. There were no objections filed within the Court-ordered objection period, and there have been no objections filed to date. RG/2 issued the required CAFA notices, and there have been no objections from any government officials. Only one individual filed a request for exclusion from the settlement.

## II.   Summary of the Terms of the Settlement and Notice Process

The Settlement's terms are detailed in the Agreement. See Dkt. No. 28-1.

A. The Settlement Class.

The Settlement Class preliminarily certified by the Court in this hybrid action consists of a FLSA Collective opt-in class under 29 U.S.C. § 216(b), and an opt out class under Rule 23(b)(3) of the Federal Rules of Civil Procedure, defined as:

---

[1] See Agreement, ¶ 6(b).

FLSA Collective:  The FLSA Collective consists of all Named Plaintiffs and Opt-In Plaintiffs who filed or submitted opt-in Consents by the settlement date. The FLSA Collective, combined with those State Settlement Class members who timely submit a Claim form to opt-in and receive payment on their FLSA claim, together will constitute the final "FLSA Settlement Collective."

State Settlement Class:  The State Settlement Class consists of the individuals reflected in the final comprehensive spreadsheet produced by Academy prior to mediation, who were paid during any applicable Claim Periods in the manner covered by the Claim in the states of Arizona, California, Colorado, Idaho, Illinois, Maryland, Ohio, and Washington, unless removed from the State Settlement Class by timely filing a request for exclusion from the Settlement in compliance with the Agreement, for the Claim from the applicable State Class Start Date through the end of the Claims Period as applicable for each item addressed therein (each state identified in this subsection a "State Class," each member of a State Class a "State Settlement Class member," and collectively the "State Settlement Classes").

B. Monetary Relief for the Class.

Pursuant to the Agreement, Academy agrees to pay the total sum of Nine Hundred Twenty-Five Thousand Dollars ($925,000.00) (the "Total Settlement Amount") into a Qualified Settlement Fund ("QSF") in order to fully and finally resolve and settle the Claim for the Participating Class Members. See Agreement, ¶ 6(a). The Total Settlement Amount is inclusive of the Settlement Administrator's administration costs; Class Counsel's fees paid at 33% of the Total Settlement Amount, and Class Counsel's reasonable advanced litigation costs and expenses; back wages; liquidated/statutory damages or penalties; and service payments to Named Plaintiffs, if awarded by the Court; arising out of the Claim. Id. The Total

Settlement Amount will cover the full amount of both the Participating Class Members' W-2 withholdings (and state/local withholdings if applicable) on the wages portion of their Settlement Payments, and any employer share of payroll taxes on the wages portion of the Settlement Payments made to Participating Class Members, to be paid by the Settlement Administrator from the QSF created for this Settlement. *Id.* No amount of the Total Settlement Amount will revert to Defendant. *Id.* Uncashed check amounts from claimed funds after all reasonable skip tracing attempts at contact will be returned to the Settlement Administrator for deposit with any applicable state unclaimed property office. *Id.*

C. <u>Additional Non-Monetary Benefits to the Class</u>.

The Parties represent that Plaintiffs' lawsuit prompted Defendant to change its pay practices; thus, since April 2016, all of Defendant's currently employed non-exempt employees (including but not limited to employed Class Members) have benefitted from this Action by receiving overtime pay on their production bonus amounts among other benefits.[2]

D. <u>Class Release</u>.

In exchange for the benefits conferred by the Settlement, all participating Class Members who did not exclude themselves from the Settlement will be deemed

---

[2] As an additional benefit to participating settlement members, Defendant releases any claims against each participating settlement member arising out of asserting their released claims, releases any claims for recoupment or reimbursement of severance payments or sign-on bonuses paid, and agrees that participating in the Settlement does not breach any prior agreement. Agreement, ¶ 14(d).

to have granted the applicable releases as detailed in the Agreement. The Settlement results in release of the specific Claim (as defined more fully in the Agreement) under the FLSA of the named and opt-in Plaintiffs, and certifying settlement-purposes-only class actions under Fed. R. Civ. P. 23, limited to those arising out of the specific factual predicate of the Complaint, covering all individuals whose bonuses paid were not factored into overtime premiums paid, who were employed within the states of Arizona, California, Colorado, Idaho, Illinois, Maryland, Ohio, and Washington who did not timely exclude themselves resulting in the limited release of the Claim under those applicable state laws. *Id.* at ¶ 14. In addition, those individuals within those states who had not opted in to the lawsuit through the original notice and opt-in process had the opportunity to claim an additional payment if they timely sign and return a Claim Form joining the FLSA collective action and thereby release their FLSA claim specific to the claim at issue arising out of the factual predicate in the Complaint. *Id.*, at ¶ 14(c). If a State Settlement Class Member did not submit a FLSA claim form, they did not release any FLSA claims, but they will not receive the additional FLSA payment and such unclaimed amounts (i.e., one-half of their total offered settlement amount) will be redistributed among those who claimed FLSA payments in exchange for the limited scope FLSA release. *Id.* at ¶¶ 10(3)(d), 14(a).

E. The Settlement Notice Process.

The Settlement Administrator sent each member of the classes their

respectively applicable Court-approved Notice ("Notice") and, for absent class members eligible to claim their additional offered FLSA payment, a Court-approved Claim Form ("Claim Form"), by U.S. Mail and email. The Notice set forth the material settlement terms and instructions on whether any action is required and how to exercise their settlement options. The Notices for Rule 23 members explained how to submit objections to the settlement, when and where to appear at the final fairness hearing, or how to opt-out of the Settlement altogether. The Claim Form could be electronically signed and submitted directly by online portal, or by mail, email, or facsimile, to the Settlement Administrator no later than February 25, 2019.

The Settlement Administrator performed skip tracing for returned undeliverable Notice packets, processed Claim Forms, and reallocated unclaimed offered additional FLSA payments among all Class Members participating in the FLSA Collective.

## III. <u>DISCUSSION.</u>

The federal courts have long recognized a strong policy and presumption in favor of class settlements. "Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). Indeed, in this Circuit and nationwide, there is a "policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982). "Particularly in class action suits, there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F. 2d 1326, 1331 (5th Cir. 1977); *see also Murchison v. Grand*

*Cypress Hotel Corp.,* 13 F.3d 1483, 1486 (11th Cir. 1994) (noting that the Eleventh Circuit Court of Appeals "favor[s] and encourage[s] settlements in order to conserve judicial resources.").

Class settlements minimize the litigation expenses of the parties and reduce the strain that litigation imposes upon already scarce judicial resources. *Lunsford v. Woodforest Nat'l Bank*, No. 1:12-cv-103-CAP, 2014 U.S. Dist. LEXIS 200716, at *14 (N.D. Ga. May 19, 2014). Fed. R. Civ. P. 23(e) provides that the Court shall approve the settlement of a class action. In a class action, the "court plays the important role of protector of the [absent members'] interests, in a sort of fiduciary capacity." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995). The ultimate determination whether a proposed class action settlement warrants approval resides in the Court's discretion. *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968).

A. The Class Received Adequate Notice and Had Opportunity to Be Heard.

In addition to having personal jurisdiction over Plaintiffs, who are parties to this Action, the Court also has personal jurisdiction over all members of the Settlement Class because they received the requisite notice and due process. *See Lunsford*, 2014 U.S. Dist. LEXIS 200716, at *15 (*citing Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (*citing Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)); *see also In re Prudential Ins. Co. Am. Sales*

*Practice Litig.*, 148 F.3d 283, 306 (3d Cir. 1998), <u>cert. denied</u>, 525 U.S. 1114 (1999)).

1. <em>The Best Notice Practicable Was Furnished.</em>

The Settlement Notice Program administered by the Settlement Administrator was multi-faceted, and included (1) distribution of Court-approved Notice and Claim Forms by U.S. Mail with self-addressed stamped return envelopes ("Mailed Notice") and by email including a hyperlink to the Settlement Administrator's online portal for submitting Claim Forms directly online ("Emailed Notice") to all identifiable Settlement Class Members; and (2) publication notice ("Published Notice") on the Settlement Administrator's case website designed to reach those Settlement Class Members in addition to Mailed Notice and Emailed Notice.

Each facet of the Notice Program was timely and properly accomplished. *See* Declaration of Melissa E. Baldwin, ¶¶ 2, 5-8, 10-18 (Dkt. No. 35-1) ("RG/2 Decl."); Head Decl. ¶ 19. The Settlement Administrator received the data files that identified the names and last known addresses of all Settlement Class Members, ran the addresses through the National Change of Address Database, timely issued Mailed and Emailed Notice, obtained SSN information for returned undeliverables, conducted skip tracing and requested updated address information from counsel if available, and reissued Mailed Notice accordingly for any returned undeliverables. The Settlement Administrator mailed 659 Notices, and because the Settlement Administrator was able to locate updated address information for all 41 of the

Notices returned as undeliverable and reissue Notice for each, it may reasonably be presumed that all Notices have been successfully delivered to the potential Settlement Class Members (and receipt of concurrent emailed Notice may also be presumed). RG/2 Decl., ¶ 17.

In addition, a toll free number has been operational since December 21, 2018. RG/2 Decl. ¶ 16. By calling this number, Settlement Class Members could leave a message and receive a return call from RG/2 personnel to provide answers to questions, process address updates, explain the settlement and settlement process, and address any concerns. *Id.* As of this date, the toll free number has handled 37 calls. *Id.*

2.    *The Notice Was Reasonably Calculated to Inform Settlement Class Members of Their Rights.*

The Court-approved Notice satisfied due process requirements because it described "the substantive claims . . . [and] contain[ed] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *Lunsford*, 2014 U.S. Dist. LEXIS 200716, at *17 (*citing In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104-05 (5th Cir. 1977)). The Notice, among other things, defined the Settlement Class, described the release(s) provided to Academy under the Settlement depending on acceptance of an offered additional FLSA payment, the settlement amounts as well as the individual Notice recipient's preliminarily allocated individual settlement payment amount, and the calculation method and proposed distribution of the Settlement proceeds. The Notice informed

Settlement Class Members of their right to opt out or object, the procedures for doing so, and the time and place of the Final Approval Hearing. It also notified Settlement Class Members that a class judgment would bind them unless they opted out, and told them where they could get more information – for example, at the website that posts a copy of the Notice documents, Settlement Agreement, Court's Orders, and other important court documents. Further, the Notice described Class Counsel's intention to seek attorneys' fees of thirty-three percent (33%) of the $925,000 Settlement Fund.

The Court finds the Notice was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.*, at * 18 (*citing Shutts*, 472 U.S. at 812 (*quoting Mullane*, 339 U.S. at 314-15)). This Settlement involved notice by mail, email, and online notification, and any Settlement Class Member who wished to express comments or objections had ample opportunity to do so.

B.     The Settlement Is Fair, Adequate, and Reasonable.

In deciding whether to approve the Settlement, the Court analyzes whether it is "fair, adequate, reasonable, and not the product of collusion." *Id.* (*citing Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). A settlement is fair, reasonable, and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *Id.*, at * 19 (*quoting In re*

*Lorazepam & Clorazepate Anittrust Litig.*, MDL No. 1290, 2003 U.S. Dist. LEXIS 12344, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting Manual for Complex Litigation (Third) § 30.42 (1995))). Importantly, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *Id.* (*quoting In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted)).

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness, and adequacy of a class settlement under Rule 23(e):

> (1) the existence of fraud or collusion behind the settlement;
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the probability of the plaintiffs' success on the merits;
> (5) the range of possible recovery; and
> (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Id.* (*citing Leverso*, 18 F.3d at 1530 n.6; *see also Bennett*, 737 F.2d at 986). The analysis of these factors set forth below shows this Settlement to be eminently fair, adequate, and reasonable.

### 1.   *There Was No Fraud or Collusion.*

The parties engaged in prolonged adversarial litigation and negotiations, demonstrating the absence of fraud or collusion behind the Settlement. *See, e.g.,*

*Lunsford*, 2014 U.S. Dist. LEXIS 200716, at *20 (*citing Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (court had "no doubt that this case has been adversarial")). The parties settled this Action by mediation with an experienced mediator, Steven Pearl, which further confirms that the process was procedurally sound and not collusive. *See, e.g., Hosier v. Mattress Firm, Inc.*, 2012 U.S. Dist. LEXIS 94958, at *10-11 (M.D. Fla. June 8, 2012). Finally, the fact that the continued negotiations of settlement agreement terms and Notice documents were lengthy, continuing for more than a year after the initial mediation and involving additional negotiation of non-monetary terms, further demonstrates the absence of collusion. *See, e.g., Lunsford*, 2014 U.S. Dist. LEXIS 200716, at *20 (*citing In re Motorsports Merchan. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1338 (N.D. Ga. 2000) ("This was not a quick settlement, and there is no suggestion of collusion"); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001); *Warren v. City of Tampa*, 693 F. Supp. 1051, 1055 (M.D. Fla. 1988) (record disclosed no evidence of collusion, but to the contrary showed "that the parties conducted discovery and negotiated the terms of settlement for an extended period of time"), *aff'd*, 893 F.2d 347 (11th Cir. 1989)).

2. *The Settlement Averts Years of Complex and Expensive Litigation.*

"FLSA claims typically involve complex mixed questions of fact and law." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981). The FLSA and state wage and hour law claims and defenses are complex; litigating them would

be both difficult and time-consuming. Head Decl. ¶ 22. Although this Action was litigated for almost three years before the Parties finalized a signed agreement to resolve it, recovery by any means other than settlement would require additional years of litigation. *Id.*; *see Lunsford*, 2014 U.S. Dist. LEXIS 200716, at *20 (*citing United States v. Glens Falls Newspapers, Inc.*, 160 F. 3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial")).

In contrast, the Settlement provides immediate and substantial benefits to approximately 657 Settlement Class Members, all of whom are current or former Academy employees. RG/2 Decl. ¶ 19; Head Decl. ¶ 24. Particularly because the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992) (citation omitted), there can be no doubt about the adequacy of the present Settlement, which provides reasonable benefits to the Settlement Class. *Lunsford*, 2014 U.S. Dist. LEXIS 200716, at *21.

### 3. *The Factual Record Is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment.*

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *Lunsford*, 2014 U.S. Dist.

18

LEXIS 200716, at *22 (*citing In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995)). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Id.* (*quoting Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992)).

Plaintiffs settled the Action with the benefit of extensive class and merits-based discovery. Head Decl. ¶¶ 30, 32. Class Counsel's review of the payroll, class identification, and other documents produced positioned them to evaluate with confidence the strengths and weaknesses of Plaintiffs' claims, Academy's defenses, and the prospects for success on issues of Rule 23 class certification, FLSA collective action decertification, FLSA preemption of state law claims, willfulness and "good faith" defenses, potential preclusive effects of later-filed California state court class action claims, summary judgments, and trial. *Id.* Prior to settling, Class Counsel developed ample information from which to assess the probability of success, the possible range of recovery, and the likely expense and duration of the litigation. *Id.* at ¶¶ 30, 32, 13. Even in the absence of such discovery, Class Counsel are familiar with the legal issues and likely defenses of employers on these overtime regular rate issues through litigating similar cases challenging the calculation of the regular rate used to pay overtime premiums. *Id.* at ¶ 13. "Information obtained from other cases may be used to assist in evaluating the merits of a proposed settlement of a different case." *Lunsford*, 2014 U.S. Dist. LEXIS 200716, at *23 (*citing Lipuma*,

406 F. Supp. 2d at 1325).

        4. *Plaintiffs Would Have Faced Obstacles to Prevailing and Delay*.

The "likelihood and extent of any recovery from the defendants absent . . . settlement" is another important factor in assessing the reasonableness of a settlement. *Id.* (*citing Domestic Air*, 148 F.R.D. at 314; *see also Ressler*, 822 F. Supp. at 1555 ("A Court is to consider the likelihood of the plaintiff's success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise")). Here, Defendant vigorously disputed liability on the regular rate claims asserted, and under the Settlement Defendant waives certain claims and offset defenses against Class Members that Defendant would not be required to waive if the case proceeded to trial.

Apart from the risks, continued litigation would have involved substantial delay and expense, which further counsels in favor of Final Approval. Given the risks attending these claims, as well as the certainty of substantial delay and expense from ongoing litigation and class certification/decertification proceedings, the Settlement cannot be seen as anything except a fair compromise. *Lunsford*, 2014 U.S. Dist. LEXIS 200716, at *24 (*citing Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" creating "great uncertainty as to the fact and amount of damage," making it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial")).

5.    *The Benefits Provided by the Settlement Are Fair, Adequate,*
      *and Reasonable Compared to the Range of Possible Recovery.*

In determining whether a settlement is fair given the potential range of recovery, the Court is guided by the principle that "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Id.* (*citing Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990)). Here, however, each settlement participant is receiving a net settlement payment amount that approximately compensates them for more than 100% of their allegedly unpaid overtime premium amounts for their maximum possible recovery periods, and a significant portion of maximum possible additional liquidated damages, interest, and, as applicable, waiting time penalties. Head Decl., ¶ 24. "Settling for close to the amount of full liability represents a respectable victory for the class members and therefore favors approval of settlement." *Creed v. Benco Dental Supply Co.*, No. 3:12-CV-01571, 2013 U.S. Dist. LEXIS 132911, at *9 (M.D. Pa. Sep. 17, 2013).

Through this Settlement, Plaintiffs and the Settlement Class Members have achieved a recovery of full unpaid overtime wages and close to the amount of full liability as assessed under various scenarios, without any further risk or delay. Head Decl. ¶ 25. The total settlement amount is fair and reasonable given the obstacles confronted and the complexity of the action, and the significant barriers that stood between the pre-settlement status of the case and final judgment, including the prospect of contested class certification/decertification and potential interlocutory

Rule 23(f) appeal of any order granting class certification; motions for summary judgment; trial; and post-trial appeals. Head Decl. ¶ 24. Taking these risks into account, the $925,000 Settlement Fund represents an outstanding result. *See* Head Decl. ¶ 25.

Courts also take into account the fact that non-monetary relief adds value to a settlement. *Ingram*, 200 F.R.D. at 689 (approving settlement where "the programmatic relief" in addition to monetary relief was significant). Here, Plaintiff's lawsuit prompted Academy to change its pay practices, and thus since April 2016 Defendant's non-exempt employees (including but not limited to employed Class Members) have benefitted from Plaintiff's prosecution of this action by receiving overtime pay on their production bonus amounts among other benefits.

The Court finds that the financial recovery for the Settlement Class, combined with the non-monetary "programmatic relief" inuring to the benefit of certain Settlement Class Members and in fact all non-exempt employees since 2016, is a significant achievement by any objective measure. *See Lunsford*, 2014 U.S. Dist. LEXIS 200716, at *26.

6.    *The Opinions of Class Counsel, the Class Representatives, and Absent Class Members Favor Approval of the Settlement.*

The Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Id.* (*citing Warren*, 693 F. Supp. at 1060; *see also Domestic Air*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely

upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel'") (citations omitted)); *see also Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (the "court is entitled to rely upon the judgment of experienced counsel for the parties…[and t]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.") (citations omitted). The Parties were represented by competent, experienced counsel with extensive experience in wage and hour class and collective action litigation. Head Decl., ¶¶ 3-9, 31. Counsel for the Parties, having thoroughly vetted the legal, factual, and evidentiary issues in this case, recommend approval of this settlement. Joint Motion; Head Decl. ¶ 26.

In addition, there has been no opposition to the Settlement, either before the February 9, 2019 deadline for objections or thereafter. *See Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-cv-3066-JEC, 2012 U.S. Dist. LEXIS 196031, at *11-12 (N.D. Ga. Oct. 26, 2012) (fact that not one objection was lodged after campaign of direct mail notice of settlement "weighs heavily in favor of settlement approval").

And as of the February 9, 2019, deadline for requesting exclusion, only one Settlement Class Member requested to be excluded from the Settlement Class. RG/2 Decl., ¶ 21. *See Lunsford*, 2014 U.S. Dist. LEXIS 200716, at *27 (*citing Mangone v. First USA Bank*, 206 F.R.D. 222, 227 (S.D. Ill. 2001) ("In evaluating the fairness

of a class action settlement, such overwhelming support by class members is strong circumstantial evidence supporting the fairness of the Settlement"); *Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437, 1458 (E.D. Pa. 1995) ("Because class members are presumed to know what is in their best interest, the reaction of the class to the Settlement Agreement is an important factor for the court to consider")).

Moreover, as required by the Class Action Fairness Act ("CAFA"), notice of this settlement was provided to the United States Department of Justice and all applicable state attorneys general and required government agency recipients. RG/2 Decl., ¶ 10. Not one CAFA notice recipient objected to the settlement, which also weighs in favor of its approval here. *See*, *e.g.*, *Hall v. Bank of Am., N.A.*, No. 1:12-CV-22700-FAM, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014) ("[T]he Court considers the reaction of the class, as well as the reaction of the various state attorney generals and regulators, to the proposed settlement to be an important indicator as to its reasonableness and fairness."). The lack of opposition to the Settlement clearly supports final approval.

C.     The Settlement Class.

This Court has previously found the requirements of Rules 23(a) and 23(b)(3) satisfied in this Action for purposes of settlement. See Dkt. No. 32. The Court hereby reiterates its findings that: (a) the Settlement Class Members are so numerous that joinder of them is impracticable; (b) there are questions of law and fact common to the Settlement Class that predominate over any individual questions; (c) the claims

of the Class Representatives are typical of the claims of the Settlement Class; (d) the Class Representatives and Class Counsel fairly and adequately represent and protect the interests of the Settlement Class Members; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the present controversy. For similar reasons, the Court enters final certification of the FLSA Collective under 29 U.S.C. § 216(b).

One individual listed in the RG/2 Declaration timely elected to opt out of the Settlement. The Court therefore finds and decrees that the individual who timely filed an exclusion is not part of the Settlement Class, is not bound by the Settlement or release contained therein, and will not receive any distribution from the Settlement Fund.

D.      The Application for Incentive Awards is Approved.

Service payments "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Lunsford*, 2014 U.S. Dist. LEXIS 200716, at *29 (*quoting Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006)). "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *Id.* (*quoting David v. Am. Suzuki Motor Corp.*, 2010 U.S. Dist. LEXIS 146073, 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010)). Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives. *Id.* (*citing Ingram*,

200 F.R.D. at 694 (awarding class representatives $300,000 each, explaining that "the magnitude of the relief the Class Representatives obtained on behalf of the class warrants a substantial incentive award"); *Spicer v. Chicago Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving service awards ranging from $5,000 to $100,000) (awarding $10,000 to each named plaintiff)). The factors for determining a service award include: (1) the actions the class representatives took to protect the interests of the class, (2) the degree to which the class benefited from those actions, and (3) the amount of time and effort the class representatives expended in pursuing the litigation. *Id.* at * 30 (*citing Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Although service payments are equally appropriate for FLSA collective action settlements as they are for class actions,[3] this is a hybrid Rule 23 class action/FLSA collective action settlement.

The original named Plaintiff George, and the named plaintiffs who agreed to serve as class representatives in 2017 prior to the mediation and throughout the remainder of this litigation, provided invaluable assistance to counsel in this

---

[3] Service awards to representative plaintiffs in FLSA-only collective action settlements are similarly warranted. *See Basterash v. MedX, Inc.*, No. 13 C 7814, 2014 U.S. Dist. LEXIS 12818 at *3 (N.D. Ill. Jan. 31, 2014) ("incentive awards may have a place in collective actions under the FLSA just as they do [for Rule 23 class suits]"); *see also Hosier*, 2012 U.S. Dist. LEXIS 94958, at *14-15 ("Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation. Such awards are justified when the class representatives expend considerable time and effort on the case, especially by advising counsel, or when the representatives risk retaliation as a result of their participation.") (internal quotations and citations omitted).

litigation by, among other things, submitting to interviews, locating and forwarding responsive documents, and participating in conferences with Class Counsel. *See id.* In so doing, the Plaintiffs were integral to forming the theory of the case and accomplishing the hybrid class action/FLSA collective action settlement. Head Decl. ¶ 27. The service payments represent less than 1.7% of the Settlement Fund, and the service payment amounts are fair and reasonable in view of the efforts of the named Plaintiffs that have greatly benefited the Settlement Class.

The Court finds that the named Plaintiffs/Class Representatives expended substantial time and effort in representing the Settlement Class, and deserve to be compensated for such time and effort on behalf of the Settlement Class. *See Lunsford*, 2014 U.S. Dist. LEXIS 200716, at *30. Therefore, the Court approves the requested service payments of $7,500 to the named Plaintiff and $1,000 each to the eight named State Law Class Representatives, to be paid from the Settlement Fund. *See, e.g., Prowant v. Fannie Mae*, No. 1:14-cv-03799-AT [Doc. No. 109] (N.D. Ga. Nov. 27, 2018) (approving $10,000 service payments to each named plaintiff in FLSA collective action settlement, compensating $2,500 per year of service in the litigation).

D.   <u>Class Counsel's Attorney's Fees and Costs Are Approved</u>.

Plaintiffs request approval of Class Counsel's attorneys' fees equal to thirty-three percent (33%) of the $925,000 Settlement Fund created through Class Counsel's efforts. <u>See</u> Agreement, ¶ 6(b). The Court analyzes this fee request under

*Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).[4] As set forth below, in consideration of the *Camden I* factors, the Court concludes the requested fee is appropriate, fair, and reasonable and is therefore approved.

1. *The Law Awards Class Counsel Fees From the Common Fund Created Through Their Efforts.*

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained. *Lunsford*, 2014 U.S. Dist. LEXIS 200716, at \*31 (*citing Camden I*, 946 F.2d at 771; *also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). The Supreme Court and the Eleventh Circuit have recognized that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole. *Id.*; see also *Camden I*, 946 F.2d at 771 ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval"). Adequate compensation promotes the availability of counsel for aggrieved persons. *Lunsford*, 2014 U.S. Dist. LEXIS 200716, at \*32.

---

[4] *See, e.g., Duque v. 130 NE 40th St., LLC*, No. 14-23965-CIV-KING, 2016 U.S. Dist. LEXIS 189154, at \*8 (S.D. Fla. Jan. 27, 2016) (common fund settlement of hybrid Rule 23 class action/FLSA collective action requires application of *Camden I* common benefit doctrine; awarding fees at 33% of common fund); *see also Henderson v. 1400 Northside Drive, Inc.*, No. 1:13-CV-3767-TWT [Doc. No. 177] (N.D. Ga. Mar. 17, 2017) (approving attorney's fees in FLSA-only collective action settlement at one-third of $1,360,000 common fund).

In *Camden I* – the controlling authority regarding attorneys' fees in common-fund class actions – the Eleventh Circuit held that:

> the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.

*Id.* (*quoting Camden I*, 946 F.2d at 774; *also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1362 ("the Eleventh Circuit made clear in *Camden I* that percentage of the fund is the exclusive method for awarding fees in common fund class actions")).

Under the Eleventh Circuit's *Camden I* precedent and this Court's rulings, the Court determines a reasonable fee by determining the appropriate fee percentage for this case rather than by conducting a lodestar analysis. *Id.* The Court has substantial discretion in determining that the requested 33% percentage of the fund fee is appropriate.

Based on the findings below, the Court finds that Class Counsel are entitled to an award of thirty-three percent (33%) of the $925,000 Settlement Fund secured through their efforts.

### 2. *Application of the Camden I Factors Supports the Requested Fee.*

The Eleventh Circuit has provided a set of factors the Court should use to determine a reasonable percentage to award class action counsel:

> (1) the time and labor required;

(2) the novelty and difficulty of the relevant questions;
(3) the skill required to properly carry out the legal services;
(4) the preclusion of other employment by the attorney as a result of his acceptance of the case;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) time limitations imposed by the clients or the circumstances;
(8) the results obtained, including the amount recovered for the clients;
(9) the experience, reputation, and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and the length of the professional relationship with the clients; and
(12) fee awards in similar cases.

*Lunsford*, 2014 U.S. Dist. LEXIS 200716, at \*34 (*quoting Camden I*, 946 F.2d at 772 n.3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

      a.  Achieving Settlement Required Substantial Time and Labor.

Prosecuting and settling the claims in this action demanded considerable time and labor, making this fee request reasonable. *Id.* at \*\* 34-35. Class Counsel spent a substantial number of hours investigating the claims of many potential plaintiffs against Academy and interviewed numerous current and former Academy employees as witnesses and/or potential plaintiffs to gather information about Academy's pay practices and their effect on calculation of overtime premiums paid. Head Decl. ¶ 29. This information was essential to Class Counsel's ability to understand the facts, scope of claims, pertinent evidence, legal and factual arguments and potential defenses, pay practices and policies at issue, and potential remedies.

*Id.*

Class Counsel expended significant resources researching and developing the legal theories and claims presented in the Complaint, the successful opposition to Defendant's motion to transfer venue to Utah, the fully briefed motion for conditional certification which resulted in stipulation to notice, and arguments pressed at mediation and in the negotiations that continued thereafter. Head Decl. ¶ 32. Once the Court denied Defendant's motion to transfer venue and Plaintiffs successfully resolved disputes about pre-certification discovery resulting in the Joint Preliminary Report, Class Counsel served Defendant with the fully briefed motion for conditional certification and eventually reached agreement to stipulated notice and pursuit of potential early resolution by mediation. Class Counsel then prepared a comprehensive mediation agreement specifying thorough and extensive production of full payroll records, bonus-related and other policy and employment documents, identification of potential state law class members, and all other information and records necessary to fully assess the regular rate violation claims at issue in Defendant's possession. *Id.* at ¶ 32. The process of developing and negotiating such discovery requests for pre-mediation exchange – always with an eye toward class certification/decertification, summary judgment, and trial – required considerable effort. *Id.* Defendant ultimately produced over 2,000 pages of .pdf documents and over 20,000 lines of spreadsheet data in response to Class Counsel's pre-mediation discovery requests. *Id.* at ¶ 32. Class Counsel's review and

analysis of the documents enabled Plaintiffs to gain an understanding of the evidence and potential damages related to the central questions in the case. *Id.* Class Counsel also devoted significant time and effort to preparing Plaintiffs' comprehensive mediation statement and damages analysis, including a screen presentation for Defendant's counsel at mediation. *Id.*

After an agreement in principle was reached at mediation resulting in a signed term sheet, additional negotiations and discussions ensued. The negotiations of settlement agreement terms and Notice documents were lengthy, continuing for more than a year after the initial mediation, and involving additional negotiation of non-monetary terms and carve-out agreements reached as to any possible adverse effects on or from (i) a potentially superseding settlement in a California state court action of the California class claims settled here, (ii) a pending FCRA class action filed by an opt-in Plaintiff in this case, among other claims; and (iii) severance payments made to opt-ins and putative class members for executing severance and release agreements upon separating from employment with Defendant. This post-mediation work consumed a significant amount of time. Head Decl. ¶ 33. Class Counsel's work paid dividends for the Settlement Class, both monetarily and non-monetarily by resolving potential adverse consequences. *Id.* Each of the above-described efforts was essential to achieving the Settlement before the Court. *Id.*

In sum, the time and resources Class Counsel devoted to prosecuting and settling this action readily justify the requested fee. *See* Head Decl. ¶ 34.

> b. The Issues Involved Were Novel and Difficult, and Required the Skill of Highly Talented Attorneys.

Class Counsel have conferred a significant benefit on the Settlement Class on complex and highly technical alleged regular rate violations. *See Barrentine v. Ark.-Best Freight Sys.*, 450 U.S. 728, 743 (1981) ("FLSA claims typically involve complex mixed questions of fact and law -- e. g., what constitutes the 'regular rate'[….]"). That benefit includes recovering full overtime back pay for the third year that is only recoverable for "willful" violations, in the face of daunting litigation challenges including decisions denying that such highly technical violations can be willful. *Meadows v. Latshaw Drilling Co., LLC*, 338 F. Supp. 3d 587, 592 (N.D. Tex. 2018) (denying willfulness for regular rate violation where defendant "did not know that excluding [OBM Pay or] completion bonuses violated FLSA," recognizing "[t]he questions of whether OBM Pay or completion bonuses should be included in regular rate of pay raise complex legal and factual issues.").

This result required the acquisition and analysis of large amounts of payroll data — and the efforts of a highly skilled wage and hour attorney with expertise in technical regular rate violation issues. Head Decl. ¶¶ 3-9, 30. Litigation of a case like this also requires counsel highly trained in FLSA collective action and Rule 23 class action law and procedure as well as the specialized issues these cases present. *Id.* at ¶ 30. Class Counsel possess these attributes, and their contributions added value to the representation of this Settlement Class consisting of over 600 employees. *Id.*

The novelty and difficulty of the issues involved created significant risk for Class Counsel. The risks were not merely one, but several. The first risk involved summary judgment denying liability on many of the regular rate claims asserted. Additional risks included potential FLSA collective action decertification or denial of Rule 23 class certification and class relief, potential defenses that the FLSA preempted certain state law class claims, potential finding by the jury that the alleged violations were not "willful" or by the judge that the Defendant satisfied the "good faith" defense to liquidated damages, denial of state law penalties and interest including notice pay or payday law penalties, potential for proving damages that (due to the low amounts owed for regular rate underpayment claims, since Defendant already paid all hourly overtime based on overtime hours actually recorded and paid) would be entirely negated by Defendant's setoff defense, and similar litigation risks.

Plaintiffs were represented in this action by competent, experienced counsel with extensive experience in wage and hour class and collective action litigation. Head Decl., ¶¶ 3-9, 30. Class Counsel's experience and expertise weighs in favor of approval.

In evaluating the quality of representation by Class Counsel, the Court should also consider the quality of opposing counsel. *Lunsford*, 2014 U.S. Dist. LEXIS 200716, at *39 (*citing Camden I*, 946 F.2d at 772 n.3; *Ressler*, 149 F.R.D. at 654). Throughout the litigation, Defendant was represented by extremely capable counsel

at Snell & Wilmer, a large law firm with over 400 attorneys.[5] They were worthy, highly competent and professional adversaries. Head Decl. ¶ 31; *see also Lunsford*, 2014 U.S. Dist. LEXIS 200716, at *39-40 (*citing In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1348 (finding "Class Counsel confronted not merely a single large bank, but the combined forces of a substantial portion of the entire American banking industry, and with them a large contingent of some of the largest and most sophisticated law firms in the country") (internal quotation marks and citation omitted); *Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) (stating that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results")). The attorneys who worked for Defendant had enormous resources and experience to draw from in defending this action. *See Lunsford*, 2014 U.S. Dist. LEXIS 200716, at *40 (recognizing that where defendants are represented by extremely capable counsel from prominent national law firms throughout the litigation, who "ha[ve] enormous resources and experience to draft from in defending the [defendant]," that factor supports a 33.33% percentage of the fund

---

[5] Defendant's lead counsel Christy D. Joseph is the practice group leader for the firm's Labor and Employment Law Group with over thirty years of litigation experience, including defense of nationwide wage and hour class and collective actions. *See, e.g., Brunner v. Liautaud*, No. 14-C-5509, 2015 U.S. Dist. LEXIS 46018 (N.D. Ill. Apr. 8, 2015) (Christy D. Joseph of Snell & Wilmer, lead counsel for Jimmy John's owner James John Liautaud in consolidated nationwide Jimmy John's overtime litigation, obtains complete dismissal of Liautaud by defeating joint employer arguments).

attorney's fee under *Camden I*'s quality of representation analysis).

c. Class Counsel Achieved an Excellent Result.

Given the net recovery of full overtime backpay for the maximum available statutory limitations periods and close to full damages on potential penalties, liquidated damages and interest, in the face of significant litigation risks faced by the Settlement Class here, the Settlement represents an extraordinary result. Head Decl. ¶ 25; *see also Creed v. Benco Dental Supply Co.*, No. 3:12-CV-01571, 2013 U.S. Dist. LEXIS 132911, at *9 (M.D. Pa. Sep. 17, 2013) ("Settling for close to the amount of full liability represents a respectable victory for the class members and therefore favors approval of settlement.") Rather than facing more years of costly and uncertain litigation, the Settlement Class Members will receive an immediate cash benefit,[6] and additional benefits including waiver of setoff or recoupment claims against them if the Settlement becomes final. Head Decl. ¶ 25. The payments to the Settlement Class will be forthcoming automatically, through checks issued and administered by the Settlement Administrator, with no reversion. Agreement, ¶¶ 6(a), 7(k); Head Decl. ¶ 25.

Although the monetary benefit of the Settlement Fund alone justifies Class

---

[6] The cash benefits from this non-reversionary common fund settlement provide a "substantial, tangible, and real benefit for the Class." *Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 U.S. Dist. LEXIS 153786, at *10 (S.D. Fla. Sep. 26, 2012) ("Unlike cases in which attorneys for a class petitioned for a fee award after obtaining non-monetary relief for the class, such as in the form of 'coupons,' Class Counsel here created a wholly cash common fund.").

Counsel's attorney's fees, the Court also considers the value of the non-monetary relief that Plaintiffs achieved for the Class Members by prosecuting this action and achieving settlement through Class Counsel's efforts. *See generally Ingram*, 200 F.R.D. at 689 (approving settlement where "the programmatic relief" in addition to monetary relief was significant). Here, Plaintiff's lawsuit prompted Academy to change its pay practices, and thus since April 2016 all currently employed non-exempt employees at Academy (including, but not limited to, employed Class Members) have benefitted from Plaintiff's prosecution of this action by receiving overtime pay on their production bonus amounts among other benefits. Moreover, if given final approval, the Settlement (i) provides the Class Members with a release of any claims against them for asserting their claim or participating in the Settlement (including, for example, breach of any prior release of claims and covenant not to sue); (ii) releases any claims against a Class Member for recoupment or reimbursement of severance payments or sign-on bonuses paid. See Agreement, ¶¶ 14(a) and (d).

Courts may consider the non-monetary relief provided to the Class as "part of the settlement pie." *Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 628 (11th Cir. 2015) (per curiam), *cert. denied sub nom. Frank v. Poertner*, 136 S. Ct. 1453, 194 L. Ed. 2d 575 (2016). "When the non-cash relief can be reliably valued, courts often include the value of this relief in the common fund and award class counsel a percentage of the total fund." *Harris v. Associated Bank, N.A. (In re Checking*

*Account Overdraft Litig.)*, No. 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 190560, at *37 (S.D. Fla. Aug. 2, 2013). And when analyzing the value of non-monetary benefits, courts should consider changes to a defendant's business practices. *See Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1243-44 (11th Cir. 2011) (portion of fee properly allocated to compensation for "non-monetary benefits [counsel] achieved for the class — like company-wide policy changes...").

d. The Claims Presented Serious Risk.

The Settlement here is exceptional in light of the combined litigation risks summarized above in Section III(B)(2)(b). Consideration of the "litigation risks" factor under *Camden I* recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk. *Lunsford*, 2014 U.S. Dist. LEXIS 200716, at * 41 (*citing Sunbeam*, 176 F. Supp. 2d at 1336). Here, where the employees had already been paid full hourly rate overtime premiums for their overtime hours actually recorded and paid, many lawyers avoid this type of technical regular rate case due to its complexity, and because it involves a high number of class members who have only low individual damages amounts compared to cases where the employer failed to pay any overtime whatsoever on all hours recorded. All of this and more is enveloped by the term "undesirable." *Id.*

Further, "[t]he point at which plaintiffs settle with defendants . . . is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them." *Id.* (*citing Skelton v. General Motors Corp.*, 860 F.2d 250, 258 (7th

Cir. 1988)). "Undesirability" and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit — not retroactively, with the benefit of hindsight. *Id.* (*citing Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 112 (3d Cir. 1976); *Walco*, 975 F. Supp. at 1473).

Prosecuting the action carried risks from the outset. It was questionable whether the bulk of the regular rate claims would ultimately be upheld against attack as summarized in Section III(B)(2)(b) above, and it was uncertain whether a large, multistate class would be certified and successfully withstand appellate review. Head Decl. ¶ 23. Defendant mounted vigorous defenses to these claims, denying any and all liability, and denying the potential for liquidated damages and additional recovery for willfulness. *Id.* Certification of the large multistate class, consisting of current and former employees representing eight (8) states and maintaining a FLSA collective action of approximately 260 individuals, could be denied for a variety of reasons. *Lunsford*, 2014 U.S. Dist. LEXIS 200716, at *42; *see also* Head Decl. ¶ 23.

Given these risks, the $925,000 cash recovery obtained through the Settlement, in addition to the non-cash benefits of this action and its Settlement, constitutes an exceptional result.

> e. Class Counsel Assumed Considerable Risk to Pursue This Action on a Pure Contingency Basis, and Were Precluded From Other Employment as a Result.

In undertaking to prosecute this complex case entirely on a contingent fee

basis, Class Counsel assumed a significant risk of nonpayment or underpayment. Head Decl. ¶ 28. That risk warrants an appropriate fee. Indeed, a "contingency fee arrangement often justifies an increase in the award of attorney's fees." *Lunsford*, 2014 U.S. Dist. LEXIS 200716, at \*43 (*citing Sunbeam*, 176 F. Supp. 2d at 1335 (*quoting Behrens*, 118 F.R.D. at 548); *see also In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent-fee basis, plaintiffs' counsel must be adequately compensated for the risk of non-payment); *Ressler*, 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award")).

Public policy concerns also support the requested fee. First, Class Counsel's prosecution of this action vindicates not only the participating Settlement Class Member's individual rights, but the broader policy concerns embodied in the FLSA and state law overtime pay statutes:

> Thus, when an employee succeeds on a claim under the FLSA to recover unpaid overtime wages, that employee vindicates not only his own personal interests, but also, the larger policy concerns embodied in the FLSA. Consequently, when determining degree of success in an FLSA case, the Court must look not only to the award recovered by the plaintiff, but must also factor in the vindication of public policy achieved by a verdict in favor of the plaintiff, regardless of the amount. *See Villano*, 254 F.3d at 1305-06 (discussing fee award in civil rights case context). In other words, "a court must be careful not to place 'undue emphasis on the modest money damages that were found by the jury' because successful civil rights actions vindicate a public interest." *Id.* at 1306 (*quoting*

> *Williams v. Thomas*, 692 F.2d 1032, 1038 (5th Cir. 1982)).
> In FLSA cases, the damages may well be relatively small.
> That fact, however, does not necessarily require a finding
> that attorney's fees expended in furtherance of enforcing
> rights under the FLSA must be correspondingly small.
> Indeed, if that were the case, FLSA clients might be
> expected to have difficulty finding representation, and
> congressional intent to ensure the enforcement of the
> provisions of the FLSA would be frustrated.

*Bozeman v. Port-O-Tech Corp.*, No. 07-60569-CIV-ROSENBAUM, 2008 U.S.

Dist. LEXIS 124136, at *24-26 (S.D. Fla. Dec. 18, 2008).

In addition, ensuring the continued availability of experienced and capable

counsel to represent classes of plaintiffs holding valid but small individual claims

supports the requested fee. Head Decl. ¶ 35. As this Court recognized:

> Generally, the contingency retainment must be promoted
> to assure representation when a person could not otherwise
> afford the services of a lawyer. . . . A contingency fee
> arrangement often justifies an increase in the award of
> attorney's fees. This rule helps assure that the contingency
> fee arrangement endures. If this "bonus" methodology did
> not exist, very few lawyers could take on
> the representation of a class client given the investment of
> substantial time, effort, and money, especially in light of
> the risks of recovering nothing.

*Lunsford*, 2014 U.S. Dist. LEXIS 200716, at **43-44 (*citing Behrens*, 118 F.R.D. at

548).

The progress of the Action shows the inherent risk faced by Class Counsel in

accepting these cases on a contingency-fee basis. Despite Class Counsel's effort in

litigating this action for over three years, they remain completely uncompensated for

the time invested in the action, in addition to the expenses advanced. Head Decl. ¶

28. There can be no dispute that this case entailed substantial risk of nonpayment for Class Counsel.

Finally, Plaintiffs' engagement agreement with Class Counsel provided for a 40% contingency fee, but Class Counsel agreed to accept 33% of the Settlement Fund as its attorney's fee for the action plus payment of its advanced expenses. *See McLendon v. PSC Recovery Sys.*, No. 1:06-CV-1770-CAP, 2009 U.S. Dist. LEXIS 136999, at *6-7 (N.D. Ga. June 2, 2009) ("Class Counsel contracted [with plaintiff] for a 40% contingency fee with Class Counsel to pay expenses as they were incurred. Because Class Counsel has substantially lowered its fee expectations from the time of contract with the clients, and from the market rate in other complex litigation, a 33.33% fee award is appropriate.").

    f.  The Requested Fee Comports With Fees Awarded in Similar Cases.

The fee sought here is in line with fees typically awarded in similar cases. Courts within this Circuit have awarded attorney's fees of approximately one-third of a common fund in FLSA and wage and hour cases. *See, e.g., Duque v. 130 NW 40th St, LLC*, 2016 U.S. Dist. LEXIS 189154, at *3, n.9 (S.D. Fla. 2016) (*citing Kimmel v. Venture Construction Co.*, No. 1:10-cv-01388-RLV (N.D. Ga. 2010) (Dkt. 70) (approving 30% of common fund as attorneys' fees and costs); *Moultry v. Cemex, Inc.*, No. 8:07-cv-00453-MSS, 2008 U.S. Dist. LEXIS 126176 (M.D. Fla. 2008) (awarding 32.25% of common fund as attorneys' fees); *Kemper v. Rent-A-Center, Inc.*, No. 4:00-cv-00435-RH-WCS [Dkts. 14-15] (N.D. Fla. 2000) (awarding

33.33% of common fund approach to plaintiffs' counsel)). This is consistent with awards in this Circuit of approximately one-third of a common fund in other types of cases. *See, e.g., Lunsford*, 2014 U.S. Dist. LEXIS 200716, at **33-34 (finding award of fees at one-third of common fund "falls within this accepted range and is in accord with this Court's prior fee rulings.") (*citing, inter alia, In re Clarus Corp. Sec. Litig.*, Civil Action No. 1:00-cv-2841-CAP, 2005 U.S. Dist. LEXIS 50147 (N.D. Ga. Jan. 6, 2005) (Pannell, J.) (awarding 33.33% of $4.5 million settlement fund plus interest and expenses); *In re Medrisk, Inc. Sec. Litig.*, Civil Action No. 1:98-cv-1922-CAP (N.D. Ga. Mar. 22, 2004) (Pannell, J.) (awarding 33.33% of $4.0 million settlement fund plus reimbursement of expenses); *McLendon*, 2009 U.S. Dist. LEXIS 136999, at *12 (Pannell, J.) (awarding fees at one third of $4,000,000 common fund); *see also Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1297-98 (11th Cir. 1999) (affirming fee award of 33.33% on settlement of $40 million)).

Plaintiffs request for approval of Class Counsel's 33% fee falls within the range of the private marketplace, where contingency-fee arrangements are often between 30 and 40 percent of any recovery. Head Decl. ¶ 36; *see also Reyes v. AT&T Mobility Servs., Ltd. Liab. Co.*, No. 10-20837-Civ, 2013 U.S. Dist. LEXIS 202820, at *10 (S.D. Fla. June 21, 2013) (approving fees from FLSA collective action settlement, holding "Class Counsel's request for one-third of the settlement fund is also consistent with the trend in this Circuit. *See, e.g., Wolff v. Cash 4 Titles*, No. 03-

22778-CIV, 2012 U.S. Dist. LEXIS 153786, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement.")). The record here leaves no doubt that Plaintiffs' fee request is appropriate and comports with attorneys' fees awarded in similar cases.

g.  The Remaining *Camden I* Factors Also Favor Approving the Requested Fee.

The remaining *Camden I* factors likewise support granting approval of Class Counsel's fees. As demonstrated above, Class Counsel's experience in complex and sophisticated class action litigation was likely essential in reaching the result achieved here, and in light of litigation obstacles and with the case defended by experienced and competent counsel at a large international law firm, it is doubtful Class Counsel could have achieved the results obtained in this case. That Class Counsel was able to achieve substantial results in the most efficient manner possible without requiring protracted and extended litigation further supports the 33% fee in this case under the *Camden I* analysis. *See McLendon*, 2009 U.S. Dist. LEXIS 136999, at *10 ("This swift and successful conclusion supports an upward deviation from the benchmark.") (citations omitted). The factual record in this case and the Court's own observations of the record compel the fee award requested in this case.

While the Court awards Class Counsel attorneys' fees in the amount of thirty-three percent (33%) of the $925,000 Settlement Fund secured through their efforts, the Court notes that under the Settlement Agreement and this Court's orders, Class Counsel's work on this case will not conclude with the requested final approval

order. Class members will likely continue to contact Class Counsel with questions or to resolve issues regarding the settlement, and uncashed check amounts from claimed funds after all reasonable skip tracing attempts at contact will be returned from the Qualified Settlement Fund to the Settlement Administrator for deposit with any applicable state unclaimed property office in order to ensure maximum potential for recovery by Settlement Class Members.

### 3. *The Expense Request Is Appropriate*.

The Court finds that Plaintiffs' request for approval of reimbursement from the Settlement Fund of $20,020.23 in litigation costs and expenses advanced by Class Counsel is reasonable and justified. *Lunsford,* 2014 U.S. Dist. LEXIS 200716, at *48 (*citing Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970)). This sum corresponds to certain actual out-of-pocket costs and expenses that Class Counsel necessarily incurred and paid in connection with the prosecution and settlement of the action, exclusive of the Settlement Administrator's $4,871.87 settlement calculation and preliminary allocation fee and its $30,469 nationwide and eight state class action settlement administration fee referenced below. Head Decl. ¶ 40. "Because Class Counsel has lost the use of this money for nearly three years, the expenses requested are reasonable and necessary." *McLendon*, 2009 U.S. Dist. LEXIS 136999, at *12.

### 4. *The Settlement Administration Fees Are Approved*.

Finally, the Court approves payment of the Settlement Administrator's

$4,871.87 settlement calculation fee for preliminary allocation and CAFA notices, and its subsequent $30,469 nationwide and multi-state class action settlement administration fee, from the Settlement Fund. Head Decl. ¶ 41.

**CONCLUSION**

For the foregoing reasons, the Court: (1) grants Final Approval to the Settlement; (2) certifies for settlement purposes the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(e); (3) appoints the named Plaintiffs as Class Representatives; (4) appoints as Class Counsel the law firm and attorneys serving as Plaintiffs' counsel of record in this action; (5) approves the requested service payments for the named Plaintiffs; (6) awards Class Counsel attorneys' fees and expenses in the amount requested; (7) directs Class Counsel, Plaintiffs, Defendant, and the Settlement Administrator to implement and consummate the Settlement pursuant to its terms and conditions; (8) retains continuing jurisdiction over Plaintiffs, the Settlement Class, and Defendant to implement, administer, consummate, and enforce the Settlement and this Final Approval Order; and (9) will separately enter stipulated Final Judgment incorporating the Agreement under *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982) and *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1308 (11th Cir. 2013).

DONE AND ORDERED this 20th day of March, 2019.

/s/CHARLES A. PANNELL, JR.
CHARLES A. PANNELL, JR.
UNITED STATES DISTRICT JUDGE